[No. A060226. First Dist., Div. Three. Feb. 28, 1994.]

ABBETT ELECTRIC CORPORATION, Plaintiff and Appellant, v. RICHARD W. STOREK et al. Defendants and Respondents.

**COUNSEL**

Raymond H. Levy for Plaintiff and Appellant.

Hadden Roth, Steven Schoonover, Erskine & Tulley and Robert P. Gates for Defendants and Respondents.

**OPINION**

CHIN, J.—Abbett Electric Corporation (Abbett) appeals from the denial of its application under Code of Civil Procedure section 704.750[1] for an order for sale of a dwelling. The trial court denied the application after determining that respondent Richard W. Storek has a one-half separate property interest in the dwelling, and that the value of that interest is less than the combined amount of Storek's homestead exemption under section 704.730 and all liens and encumbrances on the dwelling. Abbett contends that the trial court erred in finding that the dwelling is not the community property of Storek and respondent Donna Belle Cook, in calculating the value of Storek's interest, and in refusing to issue an order for sale of Storek's interest notwithstanding its determined value. We find no error in the court's determination of the nature and value of Storek's interest. However, we agree that the court should have issued an order for sale notwithstanding that determination.

### FACTUAL AND PROCEDURAL BACKGROUND

Storek and Cook married on September 16, 1957. In 1973, they purchased a residence at 16 Madrone Park Circle, Mill Valley, California (hereafter the residence). They took title to the residence as follows: "RICHARD W. STOREK and DONNA BELLE STOREK, his wife, as Joint Tenants."[2] On January 11, 1984, Cook filed a petition for dissolution of marriage. The petition listed the residence as a community or quasi-community asset. In his response filed March 23, 1984, Storek incorporated by reference the listing of assets

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2] At the time, Cook's name was Donna Belle Storek.

in Cook's petition, including the designation of the residence as community property.[3]

On March 8, 1990, Abbett obtained a judgment against Storek. It recorded an abstract of judgment on November 28, 1990. On May 6, 1992, Abbett filed an "APPLICATION FOR ORDER FOR SALE OF DWELLING [CCP § 704.750]." The application sought "an order to sell all of [Storek's] right title and interest" in the residence. It alleged that, although title to the residence "is held in the name of RICHARD W. STOREK and DONNA BELLE STOREK, his wife, as Joint Tenants, . . . the dwelling is entirely community property and is subject to execution . . . ." With the application, Abbett submitted a declaration appraising the residence's value at $375,000. It also submitted copies of Cook's dissolution petition and Storek's response, which listed the residence as community property. The court denied Abbett's application without prejudice because Abbett failed to give Cook notice of the application. Abbett then refiled the application, along with the $375,000 appraisal and a second appraisal showing the fair market value of the residence as $228,460.

Storek and Cook opposed the application, arguing that the residence was separate, not community, property and that the value of Storek's separate interest in the residence was insufficient to warrant issuance of an order for sale. Regarding the documents they filed in the dissolution proceeding, Storek and Cook explained that they had designated the residence as community property because their counsel had advised that, under the circumstances, Civil Code former section 4800.1 required them to do so.[4] In 1984, when Cook filed the dissolution petition and Storek filed his response, Civil Code former section 4800.1 provided: "For the purpose of division of property upon dissolution of marriage or legal separation, property acquired by the parties during marriage in joint tenancy form is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following: [¶] (a) A clear

---

[3]We grant Storek's request for judicial notice of the status-only judgment entered in the dissolution proceeding on February 7, 1986. (Evid. Code, §§ 452, 453.) Likewise, we grant Abbett's request for judicial notice of the pendency of the dissolution proceeding and of documents that the parties filed during prior related appeals. We also grant Abbett's request that we disregard other factual material relating to the dissolution proceeding that the parties did not present to the trial court and which relates to rulings made after entry of the order here at issue. However, we deny Abbett's requests that we sanction Cook for submitting the material and that we direct revision of any rulings in the dissolution proceeding.

[4]Effective January 1, 1994, Civil Code former section 4800.1 was repealed and replaced with Family Code sections 2580 and 2581. (Stats. 1992, ch. 162, §§ 3, 10; Stats. 1993, ch. 219, §§ 111.5-111.7; Stats. 1993, ch. 876, § 15.2.)

statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (b) Proof that the parties have made a written agreement that the property is separate property." (Stats. 1983, ch. 342, § 1, p. 1538.) Storek and Cook argued that, because neither of these exceptions applied, they "had no choice but to classify the [residence] as community property in the dissolution case."

In a declaration opposing the motion, Storek, an architect, appraised the fair market value of the residence at no more than $150,000. He also stated that he and Cook "took title to the [residence] as joint tenants and it has ever since remained as joint tenancy property," that they "had been aware of the attributes of joint tenancy property at the time of the purchase and . . . inten[ded] to hold the property as joint tenants," and that his "intent to hold the property as joint tenants has never changed . . . ." Regarding his response to the dissolution petition, Storek explained that he had designated the residence as community property "because [he] was advised by [his] counsel that in a dissolution case only and as between spouses only that unless there is a statement in the deed or other documentary evidence of title that the property is specifically stated as separate property, other than a deed in joint form, there is a presumption that the property is community property."

Cook submitted a similar declaration, in which she also stated that she and Storek "took title to the Residence as joint tenants and it has ever since remained as joint tenancy property." She explained that, "[a]t the time of the purchase and taking of title to the Residence, [she] was aware of the attributes of joint tenancy property and the fact that holding property in joint tenancy was different than holding property as community property." She further explained that, throughout her marriage to Storek, it was her "intention to not expose any of [her] property interests to business or creditors' claims of . . . Storek or his business . . . ." Finally, she declared that any statements in her dissolution action "that the Residence was community property were made only because it was required by law and only for purposes of the dissolution proceeding."

After hearing, the court issued a ruling in which it found, based on the statements in the dissolution proceeding, that the residence was community property. The court further found that it could not determine the fair market value of the residence, and appointed Peter K. White to appraise the residence. White later submitted a letter to the court in which he opined that the residence's fair market value was $324,500, and that the court should deduct from that value the costs to perform deferred maintenance and correct structural defects.

After further hearing, the court reversed its earlier finding that the residence was community property and found instead that Storek and Cook intended to hold the residence as separate property from the time they took title to it as joint tenants. The court further found that the value of Storek's interest in the residence was less than the amount of his homestead exemption plus the amount necessary to satisfy all liens and encumbrances on the residence. It therefore refused to issue an order for sale. On November 20, 1992, the court filed an order denying the application. This appeal followed.[5]

## DISCUSSION

On appeal, Abbett first attacks the trial court's finding that Storek and Cook hold the residence as joint tenants and that it does not constitute community property. Abbett contends that, under Civil Code former section 5110,[6] "[t]he designation 'as husband and wife' at the best creates the presumption of community property . . . ." It further contends that "the verified Petition for Dissolution of Marriage and the verified Response thereto are an integrated agreement that the listed properties and obligations are community." Finally, Abbett contends that there is no evidence to support the trial court's finding that it was always the intent of Storek and Cook to have separate property interests in the residence. We disagree.

Under Civil Code former section 5110, the form of title here at issue creates a presumption that Storek and Cook hold the residence as joint tenants, and that it is not community property. That section provided in relevant part that when property "is acquired by husband and wife by an instrument in which they are described as husband and wife, *unless a different intention is expressed in the instrument*, the presumption is that the property is the community property of the husband and wife. . . ." (Stats. 1983, ch. 342, § 3, pp. 1538-1539, italics added.) Since the instrument by which Storek and Cook acquired the residence "provides that title is in joint tenancy, a different intent is expressed and the community property presumption does not apply." (*Kane* v. *Huntley Financial* (1983) 146 Cal.App.3d 1092, 1097, fn. 2 [194 Cal.Rptr. 880].) Rather, we must apply the presumption that Storek and Cook took separate property interests in the residence as joint tenants. (*Siberell* v. *Siberell* (1932) 214 Cal. 767, 773 [7 P.2d 1003]; *Fry* v. *Bihr* (1970) 6 Cal.App.3d 248, 252 [85 Cal.Rptr. 742]; *Borgerding* v. *Mumolo* (1957) 153 Cal.App.2d 821, 824 [315 P.2d 347] [deed conveying property "to 'Domenick Mumolo and Mildred A. Mumolo,

---

[5]The order denying the application is appealable under sections 703.600 and 704.830.

[6]Effective January 1, 1994, Civil Code former section 5110 was repealed and replaced with Family Code section 803. (Stats. 1992, ch. 162, §§ 3, 10.)

his wife, as joint tenants' . . . raised a rebuttable presumption that the property was, in fact, held in joint tenancy"].)

We reject Abbett's contention that, as a matter of law, the statements in the dissolution proceeding require a finding that the residence is community property.[7] In *Estate of Blair* (1988) 199 Cal.App.3d 161 [244 Cal.Rptr. 627], the court rejected a similar claim on analogous facts. In *Blair*, the executrix of Nancy Blair's estate claimed the estate had a one-half community property interest in a house to which Blair and her husband took title as joint tenants. (*Id.*, at pp. 164-165.) Prior to her death, Blair filed a petition for legal separation in which she listed the house as community property. (*Id.*, at p. 165.) During a deposition in the separation matter, Blair's husband testified "that he 'believed' [the house] was community property." (*Ibid.*) The trial court held that the separation petition and the deposition testimony evidenced an agreement between Blair and her husband to transmute the house from joint tenancy into community property. (*Id.*, at pp. 167-168.) The appellate court reversed, stating: "We believe it is significant . . . that the declarations of the respective parties . . . were made in their dissolution proceeding. By the time [the husband] was deposed we believe it is fair to assume that his attorney had explained to him what effect the community property presumption had on jointly held property. Thus his deposition testimony does not necessarily show the parties' separate agreement that the jointly held property was actually community property. His testimony may only refer to the fact that he was aware that he was governed by the presumption. Because this latter interpretation is reasonably probable we conclude that in the absence of other independent or corroborating evidence there is insufficient evidence to support the court's finding of transmutation." (*Id.*, at p. 168.)

We reached a similar conclusion on slightly different facts in *Estate of Casella* (1967) 256 Cal.App.2d 312 [64 Cal.Rptr. 259]. There, Mary Casella filed a petition for determination of her interest in the estate of her deceased husband, Domenico. (*Id.*, at p. 315.) She contended that title to two lots that Domenico held as separate property "was transmutted [*sic*] into community property by the action of the parties in filing separate federal income tax returns for the calendar year 1947 in which one-half of the income therefrom . . . [was] reported one-half on Domenico's return and one-half to Mary's." (*Id.*, at p. 325.) She based this contention on the fact that, "[p]rior to 1948,

---

[7]It is unclear whether Abbett contends that the community property presumption that Civil Code former section 4800.1 created for property held in joint tenancy applies. In any event, the express language of that section renders the presumption inapplicable in suits by third party creditors. (See *Kane* v. *Huntley Financial*, *supra*, 146 Cal.App.3d at p. 1097, fn. 2 [construing same presumption as it previously appeared in Civil Code former section 5110]; *Hansford* v. *Lassar* (1975) 53 Cal.App.3d 364, 371 [125 Cal.Rptr. 804] [same].)

the income from separate property of a husband had to be reported only on the husband's federal income tax return, whereas, if the separate property was converted to community property, the husband and wife would split the income . . . ." (*Ibid.*) Following *Estate of Neilson* (1962) 57 Cal.2d 733, 744-745 [22 Cal.Rptr. 1, 371 P.2d 745], we held that the filing of separate tax returns did not establish transmutation as a matter of law, but created a "rebuttable presumption" of transmutation. (*Casella, supra,* at p. 326.)

Thus, at most, the statements of Storek and Cook in the dissolution action create a rebuttable presumption that the residence is community property, which counters the rebuttable presumption under Civil Code former section 5110 that it is separate property held in joint tenancy. As we explained in *Casella,* "[i]t is for the trial court to determine whether a presumption or inference has been overcome by preponderating evidence. [Citations.]" (*Estate of Casella, supra,* 256 Cal.App.2d at p. 326.) There, we affirmed the trial court's finding of no transmutation, reasoning: "the trial court could have believed that decedent and [Mary] had their income tax returns prepared by an accountant and did not understand the significance of that manner of reporting income. [Citation.] . . . The court apparently concluded that there was no substantial evidence to find a transmutation and that the separate returns filed for the 1947 taxable year represented nothing more than an overzealous desire to minimize income taxes. [Citation.]" (*Id.,* at pp. 326-327; see also *Estate of Neilson, supra,* 57 Cal.2d at p. 745 [testimony that tax returns "were prepared by or upon the advice of a tax expert and the spouses did not understand the significance of reporting income in this manner [citations]" or "that the spouses regarded the property as separate property despite the filing of income-splitting returns" overcomes presumption created by filing separate returns].)

Following *Blair* and *Casella,* we find that the trial court in this case could have believed that Storek and Cook designated the residence as community property in the dissolution proceeding only because they believed that, for dissolution purposes only, Civil Code former section 4800.1 required them to.[8] Moreover, there is ample evidence to support the trial court's finding in this regard. As we have previously noted, both Storek and Cook submitted declarations explaining that they understood the attributes of joint tenancy property, that they intended to hold the residence in joint tenancy and not as

---

[8] The Legislature enacted Civil Code former section 4800.1 in July 1983. (Stats. 1983, ch. 342, § 1, p. 1538.) In section 4 of the Assembly bill that contained the statute, the Legislature declared its intention that the statute apply to "[p]roceedings commenced on or after January 1, 1984." (Stats. 1983, ch. 342, § 4, p. 1539.) Cook filed the dissolution petition on January 11, 1984. In *In re Marriage of Hilke* (1992) 4 Cal.4th 215, 222-223 [14 Cal.Rptr.2d 371, 841 P.2d 891], the Supreme Court held that the statute could be applied in dissolution actions filed after January 1, 1984, to property acquired before that date.

community property, and that they made contrary statements in the dissolution action only because counsel had advised them that, for dissolution purposes, the residence was community property. "The trial court was not compelled, of course, to believe this testimony. But it is sufficient, even if there were conflicting evidence, to sustain the finding." (*Fry* v. *Bihr, supra,* 6 Cal.App.3d at p. 252.)

■ Given our affirmance of the trial court's finding that Storek and Cook hold the residence as separate property in joint tenancy, we reject Abbett's contention that the court erred in considering "100% of the debts" affecting the residence and applying a full homestead exemption under section 704.730, subdivision (a). The premise of Abbett's argument is that the residence is "community property," and the supporting statutes that Abbett cites apply to community property. (See § 695.020; Civ. Code, former §§ 4800, subd. (c)(2), 5120.110, subd. (a).) Abbett does not contest the propriety of this calculation as it applies to separate property. Therefore, we need not address the issue further. (See §§ 704.800, subd. (a), 704.820; *Schoenfeld* v. *Norberg* (1970) 11 Cal.App.3d 755, 762-767 [90 Cal.Rptr. 47] [value of joint tenant's interest must exceed full amount of exemption and encumbrances].)

We also reject Abbett's attacks on the trial court's determination of the fair market value of the residence. In making this determination, the trial court took the figure from the court-appointed appraiser, and subtracted from it the figure that Storek presented as the cost of performing deferred maintenance and repairs. Although Abbett complains about the court's use of Storek's repair figure, as the trial court noted, it had "no other evidence" on this issue. Therefore, we find no error.

■ Finally, Abbett contends that, under section 704.780, subdivision (b), the trial court had a duty to issue an order for sale of Storek's interest in the residence notwithstanding its determination that the value of that interest was less than the combined amount of the homestead exemption and all encumbrances. We agree.

On its face, section 704.780, subdivision (b), appears to impose a mandatory duty to make an order for sale if the trial court determines that the dwelling is exempt. It provides in relevant part: ". . . If the court determines that the dwelling is exempt, the court shall determine the amount of the homestead exemption and the fair market value of the dwelling and *shall* make an order for sale of the dwelling subject to the homestead exemption. . . ." (Italics added.) "Generally the word 'shall' connotes a mandatory obligation." (*Morin* v. *ABA Recovery Service, Inc.* (1987) 195

Cal.App.3d 200, 205 [240 Cal.Rptr. 509], disapproved on another point in *Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 664 [25 Cal.Rptr.2d 109, 863 P.2d 179].) Thus, "in most cases," the Legislature's use in a statute of the word "shall" indicates that the statute's "provisions are mandatory . . . ." (*Francis* v. *Superior Court* (1935) 3 Cal.2d 19, 29 [43 P.2d 300].)

■ However, as Storek correctly notes, a statute's use of the word "shall" does not always mean that its provisions are mandatory. Not "every statute [that] uses the word 'shall' is obligatory rather than permissive. Although statutory language is, of course, a most important guide in determining legislative intent, there are unquestionably instances in which other factors will indicate that apparent obligatory language was not intended to foreclose [the] exercise of discretion. [Citations.]" (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 910-911, fn. 6 [136 Cal.Rptr. 251, 559 P.2d 606].) Ultimately, whether the statute's provisions are mandatory or only directory "depends on the intention of the legislature in enacting the section. [Citation.]" (*Estate of Mitchell* (1942) 20 Cal.2d 48, 51 [123 P.2d 503].) While the use of the word "shall" is indicative of legislative intent, it is not conclusive. (*Jones* v. *Tracy School Dist.* (1980) 27 Cal.3d 99, 118 [165 Cal.Rptr. 100, 611 P.2d 441].) We must also consider "the context of the statutory language, as well as other indicia of legislative intent . . . ." (*Ibid.*)

■ Here, considering the relevant clause of section 704.780, subdivision (b), "in the context of the whole statute" (*Nunn* v. *State of California* (1984) 35 Cal.3d 616, 625 [200 Cal.Rptr. 440, 677 P.2d 846]), we find a legislative intent to impose a mandatory duty on the trial court to issue an order for sale upon determining that the dwelling is exempt, regardless of the court's determination of value. As noted above, subdivision (b) provides that the court "shall make an order for sale of the dwelling subject to the homestead exemption." By contrast, subdivision (d) of section 704.780 provides that the trial court "may appoint a qualified appraiser to assist the court in determining the fair market value of the dwelling." The Legislature's use of the terms "shall" and "may" in different portions of the same statute indicates that it was aware of the different meanings of these words and intended them to denote mandatory and directory requirements, respectively. (*In re Richard E.* (1978) 21 Cal.3d 349, 353-354 [146 Cal.Rptr. 604, 579 P.2d 495]; *Rice* v. *Superior Court* (1982) 136 Cal.App.3d 81, 86 [185 Cal.Rptr. 853].)

Our consideration of the relevant statutory history leads us to the same conclusion. In 1979, the Legislature enacted Civil Code former section 1249,

which provided: "If the court determines that the land claimed exceeds in value, over and above all liens and encumbrances thereon, the amount of the homestead exemption, and that it cannot be divided, the court shall issue an order directing its sale under the execution." (Stats. 1979, ch. 185, § 10, p. 407.)[9] In 1982, when the Legislature enacted the Enforcement of Judgments Law, of which section 704.780 is a part, it did not reenact Civil Code former section 1249 in any form. The Legislature's failure to reenact Civil Code former section 1249 indicates that it did not intend to permit the court to refuse to make an order for sale. (See *People v. Dillon* (1983) 34 Cal.3d 441, 467 [194 Cal.Rptr. 390, 668 P.2d 697] [Legislature's failure to reenact section indicates intent to abrogate rule].)

Also supporting our conclusion are the comments of the California Law Revision Commission (Commission), which proposed the Enforcement of Judgments Law. The Commission gave the following explanation for the repeal of Civil Code former section 1249: "Under existing law, before a dwelling subject to the homestead exemption may be sold on execution, it must be determined that the judgment debtor's equity exceeds the amount of the exemption. This determination is unnecessary, since the market place is a better determinant of value . . . . The proposed law eliminates the determination of the judgment debtor's equity. To help ensure that the judgment creditor does not attempt to force sale of property in which the equity is less than the exempt amount, the proposed law provides that if the minimum bid at sale is not received, the judgment creditor is not entitled to recover the costs of the sale procedure and the court is required to award to the judgment debtor reasonable attorney's fees. In addition, the judgment creditor is precluded from again levying on the homestead for a period of one year."[10] (Recommendations Relating to the Enforcement of Judgments Law (Oct. 1980) 15 Cal. Law Revision Com. Rep. (1980) pp. 2092-2093, fn. omitted.) These comments are "persuasive evidence" of the Legislature's intent in subsequently enacting the recommendation into law. (*Brian W.* v. *Superior Court* (1978) 20 Cal.3d 618, 623 [143 Cal.Rptr. 717, 574 P.2d 788].)

---

[9]The predecessor to this section was Civil Code former section 1254, which provided: "If, from the report [of the appraiser], it appears to the judge that the land claimed exceeds in value, over and above all liens and encumbrances thereon, the amount of the homestead exemption, and that it can not be divided, he must make an order directing its sale under the execution." (Stats. 1945, ch. 789, § 6, p. 1477.)

[10]The Legislature subsequently enacted two of the protections to which the recommendation refers. "If no bid is received at a sale of a homestead pursuant to a court order for sale that exceeds the amount of the homestead exemption plus any additional amount necessary to satisfy all liens and encumbrances on the property, . . . the homestead shall not be sold and shall be released and is not thereafter subject to a court order for sale upon subsequent application by the same judgment creditor for a period of one year." (§ 704.800, subd. (a).) Moreover, under these circumstances, "the judgment creditor is not entitled to recover costs incurred in a proceeding under this article or costs of sale." (§ 704.840, subd. (b).) The Legislature did not, however, enact a provision awarding attorney fees to the judgment debtor.

Thus, the language of section 704.780, subdivision (b), both alone and in context, and the relevant statutory history demonstrate that the Legislature intended to impose a mandatory duty on the trial court to issue an order for sale after determining that the dwelling is exempt, the amount of the exemption, and the fair market value of the dwelling or the debtor's interest in the dwelling. Therefore, the trial court erred in denying Abbett's application.[11]

The order is affirmed insofar as it determines the nature and value of Storek's interest in the residence, and is reversed insofar as it denies Abbett's application for an order for sale. The matter is remanded to the trial court with directions that it issue a new order in compliance with the requirements of section 704.780. The parties shall bear their own costs.

White, P. J., and Werdegar, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 23, 1994. Werdegar, J., did not participate therein.

---

[11]Of course, the issuance of an order for sale does not guarantee that a sufficient bid will be received to complete the sale. (See § 704.800.)