# IN THE SUPREME COURT OF CALIFORNIA

In re CLIFFORD ALLEN BRACE, JR., Debtor

---

STEVEN M. SPEIER, as Trustee in Bankruptcy, etc.,
Plaintiff and Respondent,
v.
CLIFFORD ALLEN BRACE, JR., Individually and as Trustee,
etc., et al.,
Defendants and Appellants.

S252473

Ninth Circuit
17-60032

Bankruptcy Court for the Central District of California
6:11-bk-26154-SY

---

July 23, 2020

Justice Liu authored the opinion of the court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Cuéllar, and Groban concurred.

Justice Kruger filed a concurring and dissenting opinion.

---

In re BRACE

S252473


Opinion of the Court by Liu, J.


Many married couples in our state use community funds to acquire real estate and take title in joint tenancy. Does that property presumptively belong to the community because the couple acquired the property during marriage with community funds? Or is the property presumptively the separate property of the spouses because they took title in joint tenancy? The Legislature has enacted a presumption that characterizes this property as community in a divorce. The United States Court of Appeals for the Ninth Circuit has asked us to determine which presumption governs the characterization of joint tenancy property in a dispute between a couple and the bankruptcy trustee of one of the spouses.

More precisely, the question here is whether the form of title presumption set forth in Evidence Code section 662 applies to the characterization of property in disputes between a married couple and a bankruptcy trustee when it conflicts with the community property presumption set forth in Family Code section 760. (See Cal. Rules of Court, rule 8.548(f)(5) [this court may restate a question posed to it by a court of another jurisdiction]; see also *Peabody v. Time Warner Cable, Inc.* (2014) 59 Cal.4th 662, 665, fn. 1 (*Peabody*) [example and explanation of rule 8.548(f)(5) in context].) The answer determines how much property a bankruptcy trustee can reach to satisfy a spouse's debts. If the property is separate, then the trustee can only reach the debtor spouse's 50 percent share. If the property

1

is community, then the trustee can reach all the property, including the non-debtor spouse's share.

The issue in this case requires us to untangle a "snarl of conflicting presumptions" (*Estate of Luke* (1987) 194 Cal.App.3d 1006, 1010) in the evolution of California's treatment of joint tenancies alongside the development of our community property system. Ultimately, we hold that Evidence Code section 662 does not apply when it conflicts with the Family Code section 760 community property presumption. Further, we hold that when a married couple uses community funds to acquire property with joint tenancy title on or after January 1, 1975, the property is presumptively community property under Family Code section 760 in a dispute between the couple and a bankruptcy trustee. For property purchased before January 1, 1975, the Legislature left intact a presumption that separate property interests arise from joint tenancy title.

Because these presumptions are default rules, they are not always conclusive. Just as the presumptions themselves have evolved over time, the cognizable ways of rebutting the presumptions have also evolved. We thus answer a further question: When a married couple uses community funds to acquire property as joint tenants, is the joint tenancy deed alone sufficient to transmute the community character of the property into the separate property of the spouses? Family Code section 852 provides that for property acquired on or after January 1, 1985, a transmutation "is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (Fam. Code, § 852, subd. (a); see *id.*, subd. (e).) We hold that under this rule, joint tenancy titling of property acquired by spouses using community funds on or after

January 1, 1985 is not sufficient by itself to transmute community property into separate property. For joint tenancy property acquired between January 1, 1975 and December 31, 1984, the act of taking title as joint tenants is, in itself, insufficient to prove a transmutation; however, a court may consider the manner of taking title in determining whether the spouses had an oral agreement or common understanding. Finally, as noted, joint tenancy property acquired with community funds before January 1, 1975 is presumptively separate property.

As we elucidate below, "California's treatment of joint tenancies has a long and tortuous history and is still the subject of considerable legal concern and disagreement." (Blumberg, Community Property in California (1987) p. 157.) The Legislature may wish to examine whether current statutes are aligned with the expectations of married couples and third parties when spouses use community funds to acquire property as joint tenants. That said, we emphasize that nothing in our decision today precludes spouses from holding separate property as joint tenants or from transmuting community property into separate property held in joint tenancy as long as the applicable transmutation requirements are met. Nor does our opinion disturb the operation of the right of survivorship that typically accompanies joint tenancy title at death.

## I.

This case arises from a petition under Chapter 7 of the United States Bankruptcy Code filed by Clifford Brace in 2011. Clifford and Ahn Brace married in 1972. Around 1977 or 1978, the couple acquired a residence in Redlands. At some point before Clifford Brace declared bankruptcy, the couple acquired

a rental property in San Bernardino. The Braces acquired both properties with community funds and took title to each property as " 'husband and wife as joint tenants.' " (*In re Brace* (9th Cir. 2018) 908 F.3d 531, 534.)

A Chapter 7 bankruptcy petition creates an estate to satisfy creditors' claims. The estate generally includes "[a]ll interests of the debtor and the debtor's spouse in community property" at the time the bankruptcy case is filed. (11 U.S.C. § 541(a)(2).) The Bankruptcy Code specifies that community property is part of the estate; bankruptcy courts look to state law to determine what property counts as community property. (See *Butner v. United States* (1979) 440 U.S. 48, 54.)

The bankruptcy trustee in this case sought a declaration that the Redlands and San Bernardino properties are community property under Family Code section 760. The distinction between community and separate property matters because Ahn Brace has not joined in her husband's bankruptcy petition. If the properties are community, then the entirety of the Braces' interests in the properties becomes part of Clifford Brace's bankruptcy estate. If the properties are separate, then only Clifford Brace's one-half property interest becomes part of the estate. (*In re Reed* (9th Cir. 1991) 940 F.2d 1317, 1332; see Code Civ. Proc., § 704.820.)

The bankruptcy court found that " 'the properties were acquired by [Clifford and Ahn] Brace during the marriage with community assets and they presumptively constitute community property under applicable law. Defendants failed to establish that the . . . [p]ropert[ies] were not community in nature and, therefore, they constitute property of the Estate. . . .' " (*In re Brace* (Bankr. 9th Cir. 2017) 566 B.R. 13,

17.) The Ninth Circuit Bankruptcy Appellate Panel affirmed. (*Id.* at p. 16.) Citing *In re Marriage of Valli* (2014) 58 Cal.4th 1396 (*Valli*), which held that property acquired during marriage from a third party with community funds is community property upon divorce unless the statutory transmutation requirements have been met, the panel reasoned that public policy and statutory construction support the extension of *Valli*'s holding to the bankruptcy context. (*In re Brace, supra*, 566 B.R. at pp. 21–27.) The Braces appealed to the Ninth Circuit, which certified the question to this court. (*In re Brace, supra*, 908 F.3d at p. 535.)

## II.

A central point of disagreement between the parties concerns the applicability of two statutes: Family Code section 760 and Evidence Code section 662. Beginning with the text of these statutes, we explain the nature of the dispute.

Family Code section 760 provides: "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." As Justice Chin explained in *Valli*, "[t]he presumption, . . . that property acquired during the marriage is community, is perhaps the most fundamental principle of California's community property law," reflecting the " 'general theory . . . that the husband and wife form a sort of partnership, and that property acquired during the marriage by the labor or skill of either belongs to both.' " (*Valli, supra*, 58 Cal.4th at pp. 1408–1409 (conc. opn. of Chin, J.).)

Statutory exceptions to the community property presumption explicitly provide for separate property treatment.

For example, property that a person acquired before marriage is that person's separate property. (Fam. Code, § 770, subd. (a)(1).) All property acquired by a person after marriage by gift, bequest, devise, or descent is that person's separate property. (*Id.*, § 770, subd. (a)(2).) Property that is earned or accumulated after the spouses are separated is also separate. (*Id.*, § 771, subd. (a).) And a spouse may rebut the Family Code section 760 presumption by tracing the source of funds used to acquire the property to separate property. (*In re Marriage of Lucas* (1980) 27 Cal.3d 808, 815 (*Lucas*).) Furthermore, for property acquired on or after January 1, 1985, married persons may change — i.e., transmute — the character of property from community to separate, or vice versa, if the transmutation is "made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (Fam. Code, § 852, subd. (a); see *id.*, subd. (e).)

In 1965, the Legislature enacted Evidence Code section 662, which provides: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." The purpose of this presumption "is to promote the public policy in favor of 'the stability of titles to property.' " (*Valli, supra,* 58 Cal.4th at p. 1410 (conc. opn. of Chin, J.).)

In drafting Evidence Code section 662, the Law Revision Commission noted that the provision codifies the common law form of title presumption. (Cal. Law Revision Com. com., reprinted at 29B pt. 2A West's Ann. Evid. Code (2019 ed.) foll. § 662, p. 267.) But the cases cited by the Commission did not involve the characterization of property acquired by spouses in actions between themselves or in actions with third-party

creditors. (See *Olson v. Olson* (1935) 4 Cal.2d 434, 438 [common law form of deed presumption characterized property conveyed by parties who were not married at the time]; *Rench v. McMullen* (1947) 82 Cal.App.2d 872, 874–875 [common law form of title presumption not rebutted by oral evidence of resulting trust between two business associates].) Evidence Code section 662 does not reference the Family Code, nor does it explicitly characterize property as separate so as to provide an exception to Family Code section 760.

Evidence Code section 662 is not a separate property exception to Family Code section 760, and no party argues otherwise. The question here is whether the form of title presumption in Evidence Code section 662, and not the community property presumption in Family Code section 760, applies outside the context of marital dissolutions, specifically in a dispute between a bankruptcy trustee and a debtor spouse.

In *Valli*, we briefly addressed the intersection of the Family Code and Evidence Code section 662. In that case, a husband used community funds during marriage to buy a life insurance policy that named his wife as the policy's sole owner and beneficiary. (*Valli*, *supra*, 58 Cal.4th at p. 1399.) Upon dissolution of the marriage, the husband argued that "the policy is community property because it was purchased during the marriage with community funds," while the wife argued that "the policy is her separate property because husband arranged for the policy to be put solely in her name, thereby changing the policy's character from community property to separate property." (*Id.* at p. 1400.) We first held that the statutory transmutation requirements apply not only to interspousal transactions, but also to "purchases made by one or both spouses from a third party during the marriage" using community funds.

(*Id.* at p. 1405.)  We then held that to the extent that "Evidence Code section 662's form of title presumption ever applies in marital dissolution proceedings," "it does not apply when it conflicts with the transmutation statutes." (*Id.* at p. 1406.)  In other words, the community character of the insurance policy could not be altered except by "an express written declaration" by the husband that "he gave up his community interest in the policy bought with community funds," as required by the transmutation statute. (*Ibid.*)  The fact that the insurance policy was put in the wife's name was not "sufficient to satisfy the express declaration requirement"; thus, the policy was community property. (*Ibid.*)

In the case before us, the bankruptcy trustee contends that *Valli*'s rule extends beyond the marital dissolution context to preclude application of Evidence Code section 662 when it conflicts with the Family Code section 760 presumption in a dispute between a bankruptcy trustee and a debtor spouse. The Braces, by contrast, argue that Family Code section 760 applies in actions between the spouses to "protect[] the innocent spouse from undue influence by the other spouse," whereas Evidence Code section 662 applies to "maintain the stability of title outside of dissolution actions."  Further, amici curiae Christopher Melcher and Professor Grace Blumberg (author of Blumberg, *supra*) point to a joint tenancy form of title principle first recognized in *Siberell v. Siberell* (1932) 214 Cal. 767 (*Siberell*) that may govern characterization in certain situations.  Although caselaw has sometimes conflated *Siberell* and other presumptions arising from joint title with Evidence Code section 662 (see *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 291–292 (*Haines*); *In re Marriage of Brooks*

*& Robinson* (2008) 169 Cal.App.4th 176, 185–187; *Estate of Gallio* (1995) 33 Cal.App.4th 592, 597), they are in fact distinct.

In order to understand the applicability of these various rules, it is necessary to examine the history of the relevant statutes and their consequences for various property ownership arrangements. As we explain, the history reveals the gradual evolution of common-law separate property concepts based on form of title into a unified community property framework.

## III.

"In community property [s]tates, ownership turns on the method and timing of acquisition, while the traditional view in common-law [s]tates is that ownership depends on title." (*Hisquierdo v. Hisquierdo* (1979) 439 U.S. 572, 578.) Although California has always been a community property state, "for most of the state's history California's marital property law has contained strong elements of a separate property system." (Prager, *The Persistence of Separate Property Concepts in California's Community Property System, 1849-1975* (1976) 24 UCLA L.Rev. 1, 81.) For example, the Family Code provides that spouses may hold property "as joint tenants or tenants in common, or as community property, or as community property with a right of survivorship." (Fam. Code, § 750; see also Civ. Code, former § 161, enacted in 1872 ["A husband and wife may hold property as joint tenants, tenants in common, or as community property."].) These various forms of title give rise to different incidents of ownership. Joint tenancy creates a right of survivorship, whereby title passes to the surviving spouse without going through probate. (See *Siberell, supra,* 214 Cal. at p. 773.) In addition, joint tenants typically have separate interests in the property. (*Riddle v. Harmon* (1980)

102 Cal.App.3d 524, 527 (*Riddle*).)  This means that one joint tenant's interest cannot be reached by the creditors of the other joint tenant.  One joint tenant can also unilaterally sever the joint tenancy or alienate his or her share.  (*Ibid.*)

Community real property, by contrast, generally cannot be alienated by one spouse without the consent of the other spouse. (Fam. Code, § 1102.)  In addition, "the community estate is liable for a debt incurred by either spouse before or during marriage" except as otherwise expressly provided by statute.  (*Id.*, § 910, subd. (a).)  At death, there is no automatic right of survivorship; half of the community property belongs to the surviving spouse, and the other half belongs to the decedent.  (Prob. Code, § 100, subd. (a).)  In the absence of a will, however, the decedent's share of the community property passes through intestacy to the surviving spouse.  (*Id.*, § 6401, subd. (a).)

The various forms in which a married couple can vest title to property do not invariably reflect the underlying nature of the couple's ownership.  The Braces' situation is not uncommon: Many couples use community funds to purchase a home and take title as "husband and wife as joint tenants" without an additional indication in the deed as to whether the property is community or separate.  In a 1965 Final Report on Domestic Relations, the Assembly Interim Committee on the Judiciary noted:  "The major problem . . . is the fact that husbands and wives take property in joint tenancy without legal counsel but primarily because deeds prepared by real estate brokers, escrow companies, and by title companies are usually presented to the parties in joint tenancy form.  The result is that they don't know what joint tenancy is, that they think it is community property, and then find out upon death or divorce that they didn't have what they thought they had all along. . . ."  (Assem. Interim

Com. on Judiciary, Final Rep. Relating to Domestic Relations (Jan. 11, 1965) p. 124 (Domestic Relations).)

This lack of clarity has created difficulties for courts attempting to harmonize common-law presumptions based on form of title with the statutory community property framework. Over the years, the Legislature has "so alter[ed] the original provisions of each of the systems as to allow them both a place in our jurisprudence." (*Siberell*, *supra*, 214 Cal. at p. 771.) The evolution of various statutory presumptions is relevant to understanding the operation of community property law as it relates to this case.

## A.

The general community property presumption in Family Code section 760 is a product of legislative developments that over time granted the wife an increasing role in the management and control of community property. (See Prager, *supra*, 24 UCLA L.Rev. at pp. 68, 73–74.) The Legislature first enacted the general community property presumption in 1850. (Stats. 1850, ch. 103, § 2, p. 254 ["All property acquired after the marriage by either husband or wife, except such as may be acquired by gift, bequest, devise, or descent, shall be common property."].) In 1872, the Legislature codified this general community property presumption in Civil Code former section 164: "All other property acquired after marriage, by either husband or wife, or both, is community property." (Civ. Code, former § 164, enacted in 1872.) As originally enacted, California's community property system afforded the wife no management or control over community property, but she was able to control the disposition of her separate property during marriage. (Stats. 1850, ch. 103, §§ 1, 6, 9, p. 254.)

Against this backdrop of unequal control over community property, the Legislature sought "to facilitate the wife's management of property" by expanding her ability to acquire and manage separate property. (Blumberg, *supra*, at p. 155.) To this end, the Legislature enacted presumptions that subordinated the community property time-of-acquisition rule to the common law form of title rule. Specifically, the Legislature in 1889 amended Civil Code former section 164 to add the married woman's presumption: "All other property acquired after marriage by either husband or wife, or both, is community property; but whenever any property is conveyed to a married woman by an instrument in writing, the presumption is, that the title is thereby vested in her as her separate property. And in case the conveyance be to such married woman and to her husband, or to her and any other person, the presumption is, that the married woman takes the part conveyed to her as tenant in common, unless a different intention is expressed in the instrument." (Stats. 1889, ch. 219, § 1, p. 328, codified at Civ. Code, former § 164.) "These statutory qualifications superimpose[d] the common law technical reliance on title upon the community property reliance upon actual ownership and the presumptions relating thereto." (de Funiak, Principles of Community Property (1943) § 60, p. 143 & fn. 24 (Principles of Community Property) [describing Civil Code former section 164].)

These presumptions did not always fit neatly together. The married woman's presumption, when applied together with the community property presumption, sometimes led to claims by married women for more than a half interest in property jointly deeded to husband and wife. Our court first addressed this issue in *Dunn v. Mullan* (1931) 211 Cal. 583 (*Dunn*), a

dispute between the administrator of a deceased husband's estate and the administrators of his deceased wife's estate. Whether the wife's property was separate or community at her death would determine how the property passed to the respective estates. Applying Civil Code former section 164, the trial court found that the wife had a separate interest in half of the property as a tenant in common and that the husband and wife had a community interest in the remaining half of the property. The trial court ordered the husband's one-fourth interest to be probated to his heirs and the wife's three-fourths interest to be probated to her heirs. On appeal, the husband argued that if the wife could have a 50 percent interest as a tenant in common, it must necessarily follow that the remaining 50 percent interest was the husband's as a tenant in common. (*Dunn*, at p. 587.) This court disagreed, holding that a deed that names "husband and wife" presumptively creates a tenancy in common in which the wife holds a 50 percent separate interest with the remaining interest being community. (*Id.* at p. 588; see also *Miller v. Brode* (1921) 186 Cal. 409, 414 [a deed describing the couple as husband and wife presumptively created a tenancy in common]; *In re Regnart's Estate* (1929) 102 Cal.App. 643, 645–646 [same].)

A year later, this court in *Siberell* considered a dissolution action in which the wife, invoking Civil Code former section 164, claimed a 75 percent interest in a home purchased with community funds and titled as a joint tenancy. (*Siberell*, *supra*, 214 Cal. at p. 769.) The court declined to extend *Dunn*'s rule to joint tenancy deeds in the context of divorce for two reasons: "First, from the very nature of the estate, as between husband and wife, a community estate and a joint tenancy cannot exist at the same time in the same property. The use of community

funds to purchase the property and the taking of title thereto in the name of the spouses as joint tenants is tantamount to a binding agreement between them that the same shall not thereafter be held as community property but instead as a joint tenancy with all the characteristics of such an estate. It would be manifestly inequitable and a subversion of the rights of both husband and wife to have them in good faith enter into a valid engagement of this character and, following the demise of either, to have a contention made that his or her share in the property was held for the community, thus bringing into operation the law of descent, administration, rights of creditors and other complications which would defeat the right of survivorship, the chief incident of the law of joint tenancy. A joint tenancy is one estate and in it the rights of the spouses are identical and coextensive.

"Secondly, on its face section 164 has no application to a case where 'a different intention is expressed in the instrument' and it seems to us to be clear . . . that a joint tenancy, the evidence of which the law requires to be on the face of the conveyance creating it, is of necessity an expression of the intention to hold the property otherwise than as community property and that the equal interest of the spouses must therefore be classed as their separate but joint estate in the property." (*Siberell, supra,* 214 Cal. at p. 773.)

Although *Siberell* seemed to speak in sweeping terms of the incompatibility of community property and joint tenancy, we do not read *Siberell* so broadly for two reasons. First, *Siberell* addressed a peculiar circumstance arising from the tension between the married woman's presumption and fundamental concepts of joint tenancy. Unlike tenancy in common deeds where spouses can have unequal interests (*Dunn, supra,*

211 Cal. at pp. 587–588), a joint tenancy "is one estate [in which] the rights of the spouses are identical and coextensive" (*Siberell*, *supra*, 214 Cal. at p. 773). In "the situation of a wife holding half the property as her separate estate and the husband holding the other half as community property, it will be at once noted that there can be no unity of interest present, for the interest of the wife would be unequal to and more than that of the husband." (*Id.* at pp. 771–772.) The application of *Dunn*'s rule to joint tenancy, the court said, "would be manifestly inequitable" in its division of marital property at divorce and also "would defeat the right of survivorship, the chief incident of the law of joint tenancy." (*Id.* at p. 773.)

In rejecting the wife's contention that her claim of a 75 percent interest followed directly from Civil Code former section 164, *Siberell* observed that "on its face section 164 has no application to a case where 'a different intention is expressed in the instrument.'" (*Siberell*, *supra*, 214 Cal. at p. 773.) The titling of the spouses' ownership as a joint tenancy "on the face of the conveyance creating it," the court explained, was "an expression of the intention to hold the property otherwise than as community property," and "the equal interest of the spouses must therefore be classed as their separate but joint estate in the property." (*Ibid.*) In appealing to the statutory carveout for a "different intention . . . expressed in the instrument," *Siberell* harmonized the dictates of Civil Code former section 164 with the statute that authorized married couples to acquire and hold property as joint tenants (Civ. Code, former § 161). Had *Siberell* held otherwise, the married woman's presumption would have made it impossible for spouses to acquire and hold property as joint tenants, contrary to Civil Code former section 161. It was in that context — i.e., a wife's claim under the married woman's

presumption for a 75 percent interest in property deeded to husband and wife as joint tenants (*Siberell*, at p. 769) — that *Siberell* said that "a community estate and a joint tenancy cannot exist at the same time in the same property" (*id.* at p. 773).

Second, the court in *Siberell* expressly limited its decision to actions between the spouses: "It should be noted here that we are dealing strictly with the situation as between the parties to the marriage and are not dealing with the characteristics of the property as against the claims of judgment creditors or other third persons as was the case in *Hulse v. Lawson*." (*Siberell, supra*, 214 Cal. at p. 772.) Less than a year before *Siberell*, in *Hulse v. Lawson* (1931) 212 Cal. 614 (*Hulse*), this court reached a different conclusion in a dispute between a wife and her husband's creditor over property that the spouses had acquired during marriage as joint tenants. *Hulse* held that because the married couple used community funds to acquire the property, the property was community property, and as such, the husband's creditor could attach the couple's entire interest. (*Id.* at p. 620.) Whereas the source of the purchase funds played no role in *Siberell*, it was dispositive in *Hulse*. (See *Hulse*, at p. 620 ["It would thus appear that practically the entire purchase price of the property was derived from the community earnings and effort of Chester A. Lawson during the period when he and the appellant Gertrude B. Lawson were living together as husband and wife."].) The fact that *Siberell* reached a different result in the dissolution context — without disavowing what *Hulse* had held just one year earlier outside the dissolution context — indicates the limited scope of *Siberell*'s holding.

In 1935, the Legislature added language to Civil Code former section 164 to provide that joint conveyances to husband

and wife created a presumption of community property unless the form of title indicated otherwise: "[W]hen any of such property is acquired by husband and wife by an instrument in which they are described as husband and wife, *unless a different intention is expressed in the instrument*, the presumption is that such property is the community property of said husband and wife." (Stats. 1935, ch. 707, § 1, p. 1912, italics added.) This language, adopted shortly after *Siberell* and *Dunn*, appeared to supersede *Dunn* by making clear that property deeded to spouses as "husband and wife" is presumptively community property. At the same time, the addition of the phrase "unless a different intention is expressed in the instrument" suggests that the Legislature approved of *Siberell*'s interpretation of Civil Code former section 164: An instrument that vests title as a joint tenancy expresses a " 'different intention' " by the parties than to hold the property as community property. (*Siberell*, *supra*, 214 Cal. at p. 773.) In 1969, the Legislature moved this language, together with the general community property presumption (enacted in 1872) and the married woman's presumption (enacted in 1889), to Civil Code section 5110. (Stats. 1969, ch. 1608, § 8, p. 3339.)

## B.

In the wake of *Siberell* and these evolving statutory presumptions, courts tended to treat joint tenancy title as signifying separate property interests between the spouses, even when the property was acquired during marriage with community funds. Like *Siberell*, these cases typically dealt with divorce or other interspousal disputes. (See, e.g., *Delanoy v. Delanoy* (1932) 216 Cal. 23, 25 [dispute between wife and husband's mother over husband's conveyance of his joint tenancy interest to his mother; wife had previously obtained a

17

judgment against husband]; *Machado v. Machado* (1962) 58 Cal.2d 501, 506 (*Machado*) [divorce]; *Gudelj v. Gudelj* (1953) 41 Cal.2d 202, 213–214 (*Gudelj*) [same]; *Tomaier v. Tomaier* (1944) 23 Cal.2d 754, 757 [same]; *Schindler v. Schindler* (1954) 126 Cal.App.2d 597, 604 [same].) The court in *Schindler* made a point of quoting *Siberell*'s limiting language: "As cautioned in *Siberell*, [214 Cal. at page 772], it should be noted that we are dealing here strictly with the controversy between the parties to the marriage and are not determining standards by which the characteristics of the property are ascertained when the claims of judgment creditors or the rights of third persons are involved." (*Schindler*, at p. 604.)

Notwithstanding this express limitation of *Siberell*'s holding, some courts applied *Siberell*'s rule to disputes involving third-party creditors. (See *Application of Rauer's Collection Co.* (1948) 87 Cal.App.2d 248, 258–259 [community property held as joint tenancy is separate property for the purpose of creditor claim on homestead]; *Oak Knoll Broadcasting v. Hudgings* (1969) 275 Cal.App.2d 563, 568–569 [presumption of separate property from joint tenancy title rebutted where couple used community funds and had no intent to take separate property interests]; *Hansford v. Lassar* (1975) 53 Cal.App.3d 364, 373 (*Hansford*) [same].) Courts also applied *Siberell*'s rule at death to give effect to the right of survivorship. (See *Socol v. King* (1950) 36 Cal.2d 342, 346 (*Socol*) [probate case where "a true joint tenancy is created by a conveyance to husband and wife in that form, although the property is purchased with community funds"].)

At the same time, courts struggled to reconcile community property presumptions with the incidents of separate property in joint tenancy when dividing ownership of the family home at

18

divorce.  Because a joint tenancy deed was sufficient to create a presumption of separate property, courts were often unable to award the family home to one of the spouses.  (See *Machado, supra,* 58 Cal.2d at pp. 506–507.)  To more closely conform property division with couples' expectations, the Legislature in 1965 amended Civil Code former section 164 to extend the community property presumption to single-family homes held in joint tenancy at divorce.  (Stats. 1965, ch. 1710, § 1, pp. 3843–3844 ["[W]hen a single family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon divorce or separate maintenance only, the presumption is that such single family residence is the community property of said husband and wife."].)  The codification of this presumption superseded *Siberell* and other cases that had treated single-family homes held in joint tenancy as separate property upon divorce.  (See *Lucas, supra,* 27 Cal.3d at pp. 813–815 [discussing history of this enactment].)  This presumption was later added to Civil Code section 5110 without substantive change.  (Stats. 1969, ch. 1608, § 8, p. 3339.)  In 1983, the Legislature expanded this presumption to cover all property held in joint title, not just single-family residences, and established a writing requirement for rebuttal.  (Stats. 1983, ch. 342, § 1, p. 1538, codified at Civ. Code, former § 4800.1.)

In 1973, the Legislature made a more far-reaching change to the community property system.  Consistent with evolving norms of gender equality, the Legislature enacted landmark reforms that allocated equal management rights to the wife over community property.  Whereas previously "[t]he husband ha[d] the management and control of the community real property" subject to certain veto rights by the wife (Stats. 1917, ch. 583,

§ 2, p. 829 [Civil Code former section 172a]), now "either spouse has the management and control of the community real property, but both spouses either personally or by duly authorized agent, must join in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered." (Stats. 1973, ch. 987, § 15, p. 1901, codified at Civ. Code, former § 5127.) "[T]he concept of equal management was a radical and significant change in community property law and was a landmark step toward recognizing equality of the spouses. Accordingly, the 1975 reform legislation marked a significant dividing line between the husband-dominated community property law of the past and the equal managerial rights of the present day." (*Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 35.)

By securing to both spouses equal management rights over community property, the Legislature eroded the original impetus for facilitating the wife's ownership of separate property. Accordingly, the Legislature in the same bill amended Civil Code section 5110 to prospectively eliminate the married woman's presumption as well as the additional language adopted in 1935. (Stats. 1973, ch. 987, § 5, pp. 1898–1899.) Under this amendment, the statutory provisions that "superimpose[d] the common law technical reliance on title upon the community property reliance upon actual ownership" (Principles of Community Property, *supra*, at p. 143) do not apply to property acquired on or after January 1, 1975. The prospective repeal of the married woman's presumption eliminated the original basis of claims for an unequal interest in joint tenancy property that had precipitated *Siberell*'s rule privileging the form of title. And the prospective repeal of the

1935 language of Civil Code former section 164 (i.e., that property jointly deeded to "husband and wife" is presumptively community property "unless a different intention is expressed in the instrument") signaled that ownership interests in marital property can no longer be directly inferred from form of title, as *Siberell* had held.

Justice Kruger reads *Siberell* as entirely unaltered by the 1973 amendments because *Siberell* established a "common law transmutation rule." (Conc. & dis. opn., *post*, at p. 6.) While one may reasonably debate the extent to which *Siberell* was grounded in the statutory text of Civil Code former section 164 or the common law, *Siberell* was unquestionably a reaction to the strictures of the former married woman's presumption and the resulting inequities at dissolution. (See *ante*, at pp. 14–16.) If *Siberell* did establish a common law rule, that rule was reconcilable with the statutory presumptions only to the extent that the presumptions permitted the title instrument to express "a different intention." (*Siberell*, *supra*, 214 Cal. at p. 773.) Moreover, although *Siberell* can be understood as resting on "a transmutation theory" (conc. & dis. opn., *post*, at p. 4; *id.* at pp. 9–10 & fn. 5), this court has treated it as a title "presumption arising from the form of the deed" that applies regardless of the source of the funds or the intentions of either spouse. (*Gudelj*, *supra*, 41 Cal.2d at p. 212; see *Socol*, *supra*, 36 Cal.2d at p. 345.) The Legislature eliminated the carveout for such title presumptions in 1973.

Thus, as a result of the 1973 legislation, the form of title in property jointly held by a married couple can defeat the general community property presumption only for property acquired before 1975. For property acquired during marriage on or after January 1, 1975, the earlier form of title

presumptions no longer apply; instead, the general community property presumption applies.

After the 1973 amendments, a number of courts relied on the "different intention" language in Civil Code former section 5110 to determine the character of property acquired before 1975. (See *Kane v. Huntley Financial* (1983) 146 Cal.App.3d 1092, 1097, fn. 2 [creditor case reasoning that "[s]ince the grant deed by which the Kanes acquired the property [in 1969] provides that title is in joint tenancy, a different intent is expressed and the community property presumption does not apply"]; *Estate of Petersen* (1994) 28 Cal.App.4th 1742, 1747 [probate case finding that joint tenancy property acquired in 1960 "rebuts the community property presumption found in Civil Code section 5110" because "*the instrument specifically states otherwise*"]; see also *Abbett Electric Corp. v. Storek* (1994) 22 Cal.App.4th 1460, 1466 [creditor case relying on both the statutory language of Civil Code former section 5110 and *Siberell* to find that "the form of title here at issue creates a presumption that Storek and Cook hold the residence as joint tenants . . . [s]ince the instrument by which [the couple] acquired the residence [in 1973] [expresses] 'a different intent . . . and the community property presumption does not apply' "].)

But, as Justice Kruger details (conc. & dis. opn., *post*, at pp. 10–11), not all observers understood the 1973 amendments to abrogate *Siberell*. During the 1983 amendments to the predecessor of Family Code section 2581, a committee analysis asserted that "the *Siberell* [form of title] presumption still holds even though a general presumption favoring community property was raised with the 1973 statutory change which gives a wife equal management and control of the community assets." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 26

22

(1983–1984 Reg. Sess.) as amended Apr. 4, 1983, p. 2.) And some cases, mostly in the probate context, appeared to treat *Siberell*'s form of title presumption as a rule of common law existing separate and apart from the community property framework. (See *Estate of Castiglioni* (1995) 40 Cal.App.4th 367, 386 [applying form of title presumption to property transferred to joint tenancy in 1989]; *Estate of Gallio*, *supra*, 33 Cal.App.4th at p. 597 [applying form of title presumption to joint tenancy property acquired between 1949 and 1989]; *Estate of Levine* (1981) 125 Cal.App.3d 701, 705 [joint tenancy home purchased in April 1975 was spouses' separate property]; see also *In re Marriage of Leversee* (1984) 156 Cal.App.3d 891, 895 [applying *Siberell* progeny to joint tenancy properties that couple acquired before marriage in 1977].) But these courts, in citing *Siberell* or its progeny, did not engage in any analysis of the evolving statutory framework, including the 1973 elimination of the married woman's presumption, which was central to the issue in *Siberell*.

The same is true of our opinion in *Lucas*, *supra*, 27 Cal.3d 808, which could be read as continuing the effect of the married woman's presumption. (See Recommendation Relating to Marital Property Presumptions and Transmutations (Jan. 1984) 17 Cal. Law Revision Com. Rep. (1984) pp. 209–210 & fn. 9 [describing *Lucas* as one of the cases that "continue[d] the effect of the title presumptions by creating an inference of a gift as to property acquired before or after January 1, 1975"].) In *Lucas*, the divorcing couple bought a motorhome in 1976 using community funds to pay 25 percent of the price and separate funds of the wife to pay 75 percent. The purchase contract was made out in the husband's name, but title and registration were put in the wife's name. (*Lucas*, at p. 817.) The court noted that

the wife "wished to have title in her name alone, and [the husband] did not object." (*Ibid*.) *Lucas* held that the trial court's award of the motorhome to the wife as her separate property was supported by substantial evidence because "[t]itle was taken in [the wife's] name alone" and the husband "was aware of this and did not object." (*Id*. at p. 818.) The decision made no mention of how Civil Code former section 5110 applied to the motorhome, and its conclusion seemed to continue the effect of the married woman's presumption notwithstanding the 1973 amendment eliminating that presumption for property acquired on or after January 1, 1975. We disapprove *In re Marriage of Lucas*, *supra*, 27 Cal.3d 808 to the extent it implies that the married woman's form of title presumption continues to apply to marital property acquired on or after January 1, 1975.

Justice Kruger underscores the reliance interests arising from these applications of *Siberell* and its progeny. (Conc. & dis. opn., *post*, at pp. 11–12.) But prior cases have made little or no effort to trace the convoluted history of the law of joint tenancies. When we examine that history, we find it difficult to discern any settled expectations that married couples could have had. The Legislature recognized as much in 1965 when it enacted the predecessor of Family Code section 2581 to abate the confusion that couples encountered at death and divorce when title and underlying expectations of ownership diverged. (See Domestic Relations, *supra*, at p. 124; *ante*, at pp. 10–11.) The confusion arising from *Siberell* and its relationship to a complex statutory history is regrettable. But when we consider *Siberell*'s actual ruling — which by its terms "deal[t] strictly" with dissolution only (*Siberell*, *supra*, 214 Cal. at p. 772) — against the evolution of our community property regime after 1975, there is no longer a basis to apply its presumption of

24

separate property in a dispute between a couple and a bankruptcy trustee.

## C.

Against the backdrop of the reformed default rules governing characterization of marital property, the Legislature in 1984 substantially altered the mechanism for couples to depart from those default rules. Seeking to curb the risk of fraud, undue influence, and litigation arising from informal agreements between spouses that purported to change the character of property, the Legislature enacted our present-day transmutation statutes. (Recommendation Relating to Marital Property Presumptions and Transmutations, 17 Cal. Law Revision Com. Rep. (1984) pp. 224–225; see *Estate of MacDonald* (1990) 51 Cal.3d 262, 269 (*MacDonald*).) The legislation provides that for property acquired on or after January 1, 1985, a transmutation "is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (Stats. 1984, ch. 1733, § 3, p. 6302, codified at Civ. Code, former § 5110.730, subds. (a), (e).) This requirement is more stringent than prior law, which allowed a transmutation to be shown by an oral or written agreement or a common understanding between the spouses. (*Estate of Blair* (1988) 199 Cal.App.3d 161, 167.)

Finally, the Legislature in 1992 enacted the Family Code to unify "the dispersion of family law in several codes." (22 Cal. Law Revision Com. Reports, Fam. Code (1992) p. 7.) The Legislature assigned the various rules and presumptions discussed above to different sections of the Family Code: The transmutation requirements in the former sections of the Civil

Code were moved, without substantive change, to Family Code sections 850 to 853; the requirement of an express written declaration now appears at Family Code section 852, subdivision (a). (Stats. 1992, ch. 162, § 10, pp. 491–492.) The community property presumption applicable at divorce, previously codified at Civil Code section 5110 and then at Civil Code section 4800.1, now appears at Family Code section 2581 and extends to all "property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, or tenancy by the entirety, or as community property." (Stats. 1993, ch. 219, § 111.7, p. 1619.) The married woman's presumption and the post-*Siberell/Dunn* rule allowing form of title to rebut the community property presumption, both previously codified at Civil Code section 5110, now appear at Family Code section 803 and apply only to property acquired before 1975. (Stats. 1992, ch. 162, § 10, p. 491.) And the general community property presumption, also previously codified at Civil Code section 5110, now appears as a stand-alone provision at Family Code section 760 and applies to all property acquired during marriage "wherever situated," "[e]xcept as otherwise provided by statute." (Stats. 1992, ch. 162, § 10, p. 488.)

## IV.

As this history shows, our community property system has gradually evolved toward one that affords both spouses equal interests and control over community assets. At the same time, the rules characterizing property as community or separate based on form of title have faded in the contemporary statutory framework. The provisions of Civil Code former section 5110 (Stats. 1969, ch. 1608, § 8, p. 3339) that had allowed "a different intention . . . expressed in the instrument" conveying jointly

held property to rebut the community property presumption no longer apply; their applicability is confined to property acquired before 1975. (See Fam. Code, § 803.) The characterization of property acquired in joint form on or after January 1, 1975 is instead governed by the comprehensive language of Family Code section 760: "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." Unlike Civil Code former section 5110, Family Code section 760 does not permit the community property presumption to be rebutted simply by the manner in which a married couple takes title.

As noted, the form of title presumption in Evidence Code section 662 is not an exception to the community property presumption in Family Code section 760. The Braces principally contend here that the community property presumption is limited to the context of marital dissolution. But against a historical backdrop in which our community property framework has become more encompassing, while rules characterizing marital property based on form of title have receded, we find no indication that this is so. Nothing in the text of Family Code section 760 expresses such a limitation.

Moreover, when we look to other statutes that refer to community property, we find that the Legislature has explicitly applied the Family Code section 760 presumption to define third-party rights, such as creditor rights, against one or both spouses. (Code of Civ. Proc., § 695.020, subd. (a) ["Community property is subject to enforcement of a money judgment as provided in the Family Code."].) The Civil Code incorporates Family Code section 760 into its definition of joint property interests. (Civ. Code, §§ 682, 687.) And if spouses want to

transact with each other, the Legislature subjects these agreements to the laws governing fraudulent transfers. (Fam. Code, §§ 851, 852.) "These [Family Code] provisions presuppose that, as a general rule, third parties are entitled to rely on the community property presumption in transactions involving marital property." (*In re Brace*, *supra*, 566 B.R. at p. 24.)

In *Valli*, we held that the statutory transmutation requirements apply to purchases made by one or both spouses from a third party using community funds and that Evidence Code section 662, assuming it "ever applies in marital dissolution proceedings," "does not apply when it conflicts with the transmutation statutes." (*Valli*, *supra*, 58 Cal.4th at p. 1406.) In that case, the form of title on an insurance policy purchased with community funds and put in the wife's name was not sufficient to alter its characterization as community property under Family Code section 760.

The Braces urge us to limit *Valli* to the context of marital dissolutions. But we see no basis in the text, purpose, or history of Family Code section 760 to confine *Valli*'s holding in this way. It would carve a major hole in the community property system to hold that Evidence Code section 662, a general statute that addresses the import of legal title — and not Family Code section 760, a statute that specifically addresses the characterization of property acquired during marriage — governs the characterization of property acquired during marriage for all purposes other than divorce. (See *Rader v. Thrasher* (1962) 57 Cal.2d 244, 252 ["a special provision relating to a particular subject will govern against a general provision"]; *Haines*, *supra*, 33 Cal.App.4th at p. 301 ["where two presumptions are in conflict, the more specific presumption will control over the more general one"]; cf. *Estate of Bibb* (2001)

28

87 Cal.App.4th 461, 469–470 (*Bibb*) ["[T]he more general form of title presumption created by Vehicle Code sections 4150.5 and 5600.5 should not be used to negate the requirements of section 852, subdivision (a), which assure that a spouse's separate property entitlements are not undermined."].) In the absence of a statute that expressly restricts the applicability of the community property presumption to dissolution actions, we decline to engraft such a major limitation onto Family Code section 760. Indeed, to conclude that Evidence Code section 662 and not Family Code section 760 applies outside the context of divorce would run counter to the intent of the pivotal 1973 legislation that prospectively eliminated separate property inferences from form of title.

The Braces argue that Family Code section 2581 implies the existence of "a sort of 'hybrid estate' where joint tenancy retains its historic character as constituting two separate estates for some purposes and a unitary estate in dissolution matters." That provision says: "For the purpose of division of property on dissolution of marriage or legal separation of the parties, property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, or tenancy by the entirety, or as community property, is presumed to be community property." (Fam. Code, § 2581.) In the Braces' view, the fact that Family Code section 2581 establishes a community property presumption specifically "[f]or the purpose of division of property on dissolution of marriage or legal separation of the parties" means that spouses "hold property as joint tenants in their dealings with third parties," while the property "retains its community nature in dissolution proceedings."

29

Family Code section 2581 is a special presumption at divorce that " 'specifically governs real property designated as joint tenancy.' " (*In re Brace*, 566 B.R. at p. 24, quoting *Valli*, *supra*, 58 Cal.4th at p. 1412 (conc. opn. of Chin, J.); see *ante*, at pp. 19, 26.) Unlike the general community property presumption, the Family Code section 2581 presumption cannot be rebutted by tracing; it can only be rebutted by (1) a clear statement in the deed or other documentary evidence of title that the property is separate property and not community property, or (2) proof that the parties have made a written agreement that the property is separate property. (Fam. Code, § 2581, subds. (a), (b); see *Haines*, *supra*, 33 Cal.App.4th at p. 291.) In discussing this presumption, we have explained that "the affirmative act of specifying a form of [joint] ownership in the conveyance of title . . . removes such property from the more general [community property] presumption" and places it under the specific community property presumption now stated in Family Code section 2581. (*Lucas*, *supra*, 27 Cal.3d at pp. 814–815.) "It is because of this express designation of [joint] ownership that a greater showing is necessary to overcome the [special] presumption arising therefrom than is necessary to overcome the more general presumption that property acquired during marriage is community property." (*Id.* at p. 815.)

Thus, the import of Family Code section 2581 is that it establishes a stronger presumption of community property at dissolution when title is held in joint form, while the general community property presumption, rebuttable by tracing, applies at dissolution to property not held in joint form. Nothing in the text, purpose, or history of Family Code section 2581 suggests an intent to limit the applicability of Family Code section 760 to dissolution matters, although, as Justice Kruger notes, the

30

legislative history of the 1983 amendments suggests that some believed *Siberell* still controlled outside dissolution. (Conc. & dis. opn., *post*, at pp. 10–11.) If anything, Family Code section 2581 demonstrates that when the Legislature intends to limit a provision affecting the character of property to the marital dissolution context, it is capable of saying so. The absence of any such language in Family Code section 760 confirms that its scope is not limited to marital dissolution.

The Braces also rely on *Hansford*, *supra*, 53 Cal.App.3d 364, a dispute between a wife and her husband's creditor who was trying to reach their home held in joint tenancy. The court held that "[i]n view of the express language of [the predecessor statute to Family Code section 2581], the community-property presumption has no application to the instant case as it involves a dispute with a third party, rather than one between husband and wife in a dissolution of marriage or legal separation proceeding. The presumption that is applicable in this case at bench is that of a joint-tenancy ownership that is the presumed fact which flows from the basic fact of a deed that is joint tenancy in form." (*Id.* at p. 371.) But the property at issue was acquired well before 1975, and at the time, the relevant statutes provided that a designation of joint tenancy on the conveyance served to displace the general community property presumption. (*Ante*, at pp. 14–16, 19–21.) The presumptions in effect today are different. The rule displacing the community property presumption when "a different intention is expressed in the instrument" conveying title jointly to "husband and wife" is now confined to property acquired before 1975. (Fam. Code, § 803, subd. (c).) For property acquired on or after January 1, 1975, the general community property presumption of Family Code section 760 applies and, as noted, the special presumption of

Family Code section 2581 does not imply any limitation of Family Code section 760 to dissolution actions.

The Braces further contend that limiting the application of community property presumptions to interspousal disputes would promote stability of title. By presumptively giving effect to form of title, Evidence Code section 662 serves to "protect[] parties to a real property transaction, as well as creditors." (*Haines, supra,* 33 Cal.App.4th at p. 294.) Whereas "concerns of stability of title are lessened in characterization problems arising from [interspousal] transmutations" (*id.* at p. 295), the Braces argue, such concerns have more weight in disputes involving third parties or the rights of creditors.

But when property is held in joint tenancy, both tenants are on record title. And recorded deeds commonly indicate the marital status of the grantees; in this case, for example, the Braces took title as "husband and wife as joint tenants." (See, e.g., *Lucas, supra,* 27 Cal.3d at p. 811 [title taken as " 'Gerald E. Lucas and Brenda G. Lucas, Husband and Wife as Joint Tenants' "]; *Bibb, supra,* 87 Cal.App.4th at p. 463 [grant deed signed by husband conveying separate property home to himself "and his wife as joint tenants"]; *Estate of Mitchell* (1999) 76 Cal.App.4th 1378, 1382 [title taken as " 'Robert S. Mitchell and Shirley C. Mitchell, husband and wife as joint tenants' "]; *In re Marriage of Scherr* (1986) 177 Cal.App.3d 314, 316 [wife chose to title deed as " 'husband and wife as joint tenants' "].) If the joint tenants are married, a creditor or third-party purchaser will be on notice that the property is presumptively community and that an alienation or encumbrance of that property must be joined by both parties. The third party can inquire whether a written transmutation agreement rebuts the community property presumption; such an agreement, in order to be

"effective as to third parties without notice thereof," must be recorded. (Fam. Code, § 852, subd. (b).) We do not think this approach puts third parties at risk of not being able to determine who owns the property and the nature of the ownership.

It is true that Family Code section 760 also applies to situations where community property is titled in one spouse's name. But the risk to stability of title is mitigated by Family Code section 1102, subdivision (c)(2), which validates leases, contracts, mortgages, and deeds between the spouse holding record title to community real property and a third party acting in good faith with no knowledge of the marital relationship. This provision is an exception to the general rule that an adversely affected spouse may void unilateral conveyances of community real property. (Fam. Code, § 1102, subds. (a), (d).) The law thus protects innocent third parties who transact with the spouse holding record title to community property in circumstances where failure to do so would undermine stability of title. (Cf. *Valli*, *supra*, 58 Cal.4th at p. 1413 (conc. opn. of Chin, J.).)

Further, our approach does not undermine the stability of title in the context of probate. The Braces argue that the inapplicability of Evidence Code section 662 to this bankruptcy dispute would mean that at death "title companies could not insure title to the surviving spouse based upon a death certificate, but, instead would run the risk that a non-spousal heir might challenge title based upon allegations that the property was community in nature and not joint tenancy."

Courts have consistently held that for property titled in joint tenancy, the form of title controls at death. (See, e.g., *Estate of Gallio*, *supra*, 33 Cal.App.4th at p. 597; *Estate of*

*Levine, supra*, 125 Cal.App.3d at p. 705.) Although these cases often relied on *Siberell* or its progeny, we see no indication that the abrogation of *Siberell* in 1973 or any subsequent development suggests an intent by the Legislature to disturb the rule that the form of title controls the disposition of joint tenancy property at death.

To the contrary, the Legislature has acted in a manner consistent with the case law. In 1994, the Legislature amended Family Code section 2040 to specify that when one party files for divorce, "the summons shall contain the following notice: 'WARNING: California law provides that, for purposes of division of property upon dissolution of marriage or legal separation, property acquired by the parties during marriage in joint form is presumed to be community property. If either party to this action should die before the jointly held community property is divided, the language of how title is held in the deed (i.e., joint tenancy, tenants in common, or community property) will be controlling and not the community property presumption.' " (Stats. 1994, ch. 1269, § 13, pp. 8034–8035; Fam. Code, § 2040, subd. (c).) This reflects the common expectation that "holding property in joint tenancy will allow the surviving spouse to avoid probate when [his or] her partner dies." (*Estate of Luke, supra*, 194 Cal.App.3d at p. 1015.)

In addition, the rule that form of title controls at death was a key motivation for the Legislature's 2000 enactment of Assembly Bill No. 2913, which created a new form of title: community property with a right of survivorship. (Assem. Bill No. 2913 (1999–2000 Reg. Sess.) ch. 645, § 1, pp. 4203–4204, codified at Civ. Code, § 682.1.) This form of ownership combines the tax benefits of holding community property at the death of one spouse — a stepped-up basis in the full value of the

community property — with the right of survivorship in a joint tenancy. (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2913 (1999–2000 Reg. Sess.) as amended August 18, 2000, pp. 2–4.) In its analysis of Assembly Bill 2913, the Senate Rules Committee noted that it was necessary to create a new form of title because "[e]xisting law provides that if either spouse should die before any jointly held community property is divided, the language of how title is held in the deed (i.e., joint tenancy, tenants in common, or community property) will be controlling and not the community property presumption." (*Id.* at p. 2.)

Moreover, the Legislature has imported community property characterization rules into the Probate Code to prevent full operation of the right of survivorship in certain situations. Probate Code former section 228 provided that when a person died intestate with no surviving spouse or issue, "the [portion of the] estate . . . [that] was community property of the decedent and a previously deceased spouse" did not pass to the heirs of the decedent but instead to the children of the previously deceased spouse. (Stats. 1939, ch. 1065, § 1, p. 2992.) Probate Code former section 229 adopted a similar approach for the separate property of the previously deceased spouse. (*Id.*, at pp. 2992–2993.) In characterizing property under these statutes, courts held that "it is the source of its acquisition and not the nature of its ownership immediately before death, which is controlling." (*Hudspeth v. Earlywine* (1964) 225 Cal.App.2d 759, 762; see *Estate of Luke*, *supra*, 194 Cal.App.3d at p. 1015 ["We conclude the community property presumption, not the form-of-the-title presumption, should apply in cases arising under former section 229."]; *In re Abdale's Estate* (1946) 28 Cal.2d 587, 591–592; *In re Taitmeyer's Estate* (1943)

35

60 Cal.App.2d 699, 705, 712.) In 1983, the Legislature consolidated these statutes into Probate Code section 6402.5. Although the Legislature altered the statute's applicability to certain property, the rules for determining " 'the portion of the decedent's estate attributable to the decedent's predeceased spouse' " are the same. (Recommendation Proposing New Probate Code (Dec. 1989) 20 Cal. Law. Rev. Com. Rep. (1990) p. 1466.) By enacting specific source of acquisition rules to govern this scenario, the Legislature implicitly confirmed that unless otherwise specified, form of title controls the disposition of joint tenancy property at death.

The coexistence of the general community property presumption and the form of title rule at death highlights a precept implicit in the various legislative enactments we have discussed: The particular manner in which property is acquired, titled, or held by a married couple is conceptually and legally distinct from the underlying character of the spouses' ownership of the property as separate or community. Our decision in *Siberell* elided these concepts in order to avoid the "manifestly inequitable" division of marital property arising from the married woman's presumption. (*Siberell*, *supra*, 214 Cal. at p. 773.) Today, with that presumption no longer in effect for property acquired during marriage on or after January 1, 1975, there is nothing inequitable in a general presumption that such property held in joint tenancy is community property. (See *id.* at p. 773 ["A joint tenancy is one estate and in it the rights of the spouses are identical and coextensive."]; Fam. Code, § 751 ["The respective interests of each spouse in community property during continuance of the marriage relation are present, existing, and equal interests."].) The Legislature has expressly recognized that characterization of joint tenancy property as

community property does not "defeat the right of survivorship." (*Siberell*, at p. 773; see Fam. Code, § 2040, subd. (c).) Each spouse's right of survivorship arising from joint tenancy title remains an "expectancy" that is realized upon the other spouse's death. (*Riddle*, *supra*, 102 Cal.App.3d at p. 526.)

To be sure, the rule that form of title controls at death is not absolute. In practice, putative heirs or devisees have sought to rebut this form of title presumption in order to access the decedent's share of real property through intestacy or devise. (See *Socol*, *supra*, 36 Cal.2d at pp. 345–346; *Estate of Petersen*, *supra*, 28 Cal.App.4th at p. 1747; *Estate of Blair*, *supra*, 199 Cal.App.3d at p. 167; *Bibb*, *supra*, 87 Cal.App.4th at pp. 464–465.) But such litigation is not an artifact of what we hold in this case. Our decision today does not alter the well-established default rule that form of title controls at death, nor does it alter the procedures through which a surviving joint tenant may clear title to real property held in joint tenancy. (Prob. Code, §§ 210–212.) Compliance with these procedures entitles title insurers and third parties to rely on the affidavit of death as prima facie evidence of the surviving joint tenant's ownership. (*Id.*, § 212.)

Finally, the Braces argue that our holding will undermine the expectations of spouses and third-party creditors. Applying the community property presumption to third-party disputes outside of the dissolution context, the Braces say, "would . . . subject the interests of innocent spouses to the debts of their spouses, and in the case of bankruptcy subject their one-half interest to administration by the bankruptcy court."

But it is a basic feature of the community property system that "the community estate is liable for a debt incurred by either

spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt," unless a statute expressly provides otherwise. (Fam. Code, § 910, subd. (a).) In contrast to the indications from the Legislature that form of title controls the disposition of joint tenancy property at death, there is no indication that the Legislature intended to permit spouses to avoid community debts by the mere acceptance of a joint tenancy deed from a third party. Nor could *Siberell* be read to stand for such a proposition; as noted, *Siberell* expressly declined to opine on third-party claims and distinguished a prior case holding that a husband's creditor could reach the couple's entire interest in joint tenancy property acquired during marriage with community funds. (*Siberell*, *supra*, 214 Cal. at p. 772, citing *Hulse*, *supra*, 212 Cal. at p. 614.)

Importantly, our decision today does not prevent an innocent or estranged spouse from protecting his or her interests in separate property. For purposes other than dissolution, a spouse can prove separate ownership in jointly titled property and rebut the Family Code section 760 community property presumption by tracing. (*Lucas*, *supra*, 27 Cal.3d at p. 815.) A spouse can convert jointly held property acquired with community funds into separate property through a written transmutation agreement. (Fam. Code, §§ 850, subd. (a), 852.) A spouse can hold his or her earnings in an account outside of the other spouse's control in order to protect those earnings from liability for the other spouse's pre-marital debts. (*Id.*, § 911.) And couples can opt out of this system altogether through pre-marital agreements. (*Id.*, § 1600 et seq.) In light of these options, the Braces' concerns about stability and expectations do

not persuade us that the default rule governing the community's liability for the debts of either spouse should differ according to the nature of the action.

In sum, we hold that the community property presumption in Family Code section 760 applies not only to dissolution actions but also to a dispute between one or both spouses and a bankruptcy trustee, and that Evidence Code section 662 does not apply when it conflicts with the Family Code section 760 presumption.

## V.

Having elucidated the default rules that govern characterization of property during marriage, we now answer a further question posed by the bankruptcy trustee and amici in this case: When spouses use community funds to acquire property from a third party and take title in a joint tenancy deed, does the form of the deed constitute an express declaration that transmutes the community funds into separate property? (See Cal. Rules of Court, rule 8.548(f)(5); see also *Peabody*, *supra*, 59 Cal.4th at p. 665, fn. 1.)

As noted, spouses can change the character of property during marriage by satisfying the transmutation requirements. (Fam. Code, §§ 850, 852.) For transmutations that occurred before 1985, a written agreement is not required; a valid transmutation can be demonstrated by substantial evidence of an oral or written agreement or a common understanding between the spouses. (*Estate of Blair*, *supra*, 199 Cal.App.3d at p. 167; see *ibid.* [the conduct of the spouses is relevant evidence].)

For property acquired on or after January 1, 1985, a "transmutation of real or personal property is not valid unless

made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (Fam. Code, § 852, subd. (a); see *id.*, subd. (e).) The Legislature enacted the writing requirement "to remedy problems which arose when courts found transmutations on the basis of evidence the Legislature considered unreliable." (*MacDonald, supra*, 51 Cal.3d at p. 269.)

In *MacDonald*, we explained that the transmutation requirements are not satisfied by just "*any* writing." (*MacDonald, supra*, 51 Cal.3d at p. 269.) The adversely affected party must make an " 'express declaration' " in an instrument that "contains language which expressly states that the characterization or ownership of the property is being changed." (*Id.* at p. 272.) We reasoned that an IRA account consent agreement did not satisfy this requirement because it could not be determined from the face of the document whether the wife was "aware that the legal effect of her signature might be to alter the character or ownership of her interest in the pension funds." (*Id.* at pp. 272–273.) Similarly, we held in *Valli* that the act of putting a life insurance policy in the name of one spouse was not sufficient because the "[h]usband never expressly declared in writing that he gave up his community interest in the policy bought with community funds." (*Valli, supra*, 58 Cal.4th at p. 1406.)

By contrast, the Court of Appeal in *Bibb* found the express declaration requirement satisfied where a husband signed a grant deed conveying his interest in his separate property to him and his wife as joint tenants. (*Bibb, supra*, 87 Cal.App.4th at pp. 468–469.) The court reasoned that the deed was in the statutory form required to convey an interest in property. (*Id.*

at p. 468; see Civ. Code, § 1092 [prescribing statutory form of deed required to convey title].) Because the deed contained language that expressly conveyed the husband's interest to his wife, the court explained, the property was validly transmuted from his separate property to property held in joint tenancy by the couple. (*Bibb*, at p. 469.)

In this case, we do not address interspousal deeds by which one spouse conveys his or her separate property to both spouses as joint tenants, as in *Bibb*, or by which both spouses deed their community property to each other as joint tenants. Instead, we focus here on the common scenario of a married couple using community funds to buy property from a third party. Such a conveyance typically occurs through a grant deed signed by the third-party grantor. (Civ. Code, § 1092.) The deed conveys the third party's interest in the property to the spouses, and the spouses, as grantees, accept the interest of the grantor. Although the deed may " 'expressly declare[]' " that title is vested as joint tenants (*id.*, § 683), the deed does not "contain[] language which expressly states that the characterization or ownership of the property is being changed" between the spouses. (*MacDonald*, *supra*, 51 Cal.3d at pp. 271–272.)

Professor Blumberg, as amicus curiae, argues that the Braces relinquished "the incidents of community property ownership . . . when the parties accepted title in a deed specifying an alternative and mutually exclusive form of joint-and-equal ownership." (See Blumberg, *supra*, at p. 150 [joint tenancy "title creates a presumption of transmutation"]; see *id.* at p. 156.) But the Legislature and the courts have repeatedly lamented that spouses do not understand what effect, if any, joint tenancy title has on the characterization of property purchased with community funds. (See *In re Marriage of Buol*

(1985) 39 Cal.3d 751, 762–763; *Schindler*, *supra*, 126 Cal.App.2d at p. 601; *ante*, at pp. 10–11.) If anything, we have observed that the 1965 enactment of the special community property presumption applicable at divorce had the effect of "more closely matching the intent and assumptions of most spouses who acquire and hold their residence in joint tenancy." (*Lucas*, *supra*, 27 Cal.3d at p. 814 [discussing predecessor to Family Code § 2581].)

Against this backdrop, we see no basis to assert that married couples intend joint tenancy title to result in separate property interests with regard to third-party claims. Indeed, the mere fact that spouses choose to take title as joint tenants appears to be the kind of "unreliable" evidence that the Legislature intended to target with the transmutation statute. (*MacDonald*, *supra*, 51 Cal.3d at p. 269; see *Schindler*, *supra*, 126 Cal.App.2d at p. 601 ["It is common knowledge that innumerable husbands and wives with little or no information about estates in real property acquiesce without reflection in the suggestion that they place purchased property in joint tenancy."].) Under Family Code section 852, the question is whether it is apparent solely from the titling of a deed as a joint tenancy that the spouses understood the writing to change the character of property acquired with community funds into separate property. We conclude the answer is no because a joint tenancy deed does not itself constitute "language which expressly states that the characterization or ownership of the property is being changed." (*MacDonald*, at p. 272.)

Nor is a joint tenancy deed exempt from the express declaration requirement on the ground that neither spouse's ownership interest is adversely affected. It is true that holding property as joint tenants does not completely deprive one spouse

of possession, as is the case when one spouse takes community property with sole title. (See *Valli*, *supra*, 58 Cal.4th at p. 1399.) Taking title in joint tenancy also does not change the 50 percent interest that each spouse has in community property. But a property right is not simply the percentage share a person holds in a particular asset. It encompasses a "bundle of rights and privileges as well as of obligations" (*Union Oil Co. v. State Bd. of Equal.* (1963) 60 Cal.2d 441, 447, fn. omitted), such as the right to possess, lease, encumber, or alienate the property. Shared management and control is a defining feature of our community property system and has driven the evolution of our community property laws. (Fam. Code, §§ 1100, 1102.) With few exceptions, "either spouse has the management and control of the community real property." (*Id.*, § 1102, subd. (a).) Spouses must act as fiduciaries to one another in the management and control of the community assets. (*Id.*, § 1100, subd. (e).) And both spouses must "join in executing an instrument by which that community real property or an interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered." (*Id.*, § 1102, subd. (a).) By contrast, a "married person may, without the consent of the person's spouse, convey the person's separate property." (*Id.*, § 770, subd. (b).) Although the ability to unilaterally convey community property or the absence of fiduciary duties may be advantageous to a spouse in certain situations, the law presumes that couples desire the protections above.

Indeed, it is not difficult to see why a spouse's claim of a separate interest arising from joint tenancy title causes the other spouse's interest to be "adversely affected." (Fam. Code, § 852, subd. (a).) If a husband collateralizes his half of the couple's family home without his wife's consent, the wife's

43

ability to collateralize her half is probably not much relief for her. Such concerns are heightened by the fact that the right of survivorship — the main incident of joint tenancy title — may be unilaterally severed. (See Civ. Code, § 683.2; *Riddle, supra,* 102 Cal.App.3d at p. 526.)

In sum, for property acquired with community funds on or after January 1, 1985, the titling of a deed as a joint tenancy is not an express written declaration sufficient to transmute the property into separate property under Family Code section 852.

## CONCLUSION

We answer the Ninth Circuit's question as follows: Evidence Code section 662 does not apply to property acquired during marriage when it conflicts with Family Code section 760. For joint tenancy property acquired during marriage before 1975, each spouse's interest is presumptively separate in character. (Fam. Code, § 803; *Siberell, supra,* 214 Cal. at p. 773.) For joint tenancy property acquired with community funds on or after January 1, 1975, the property is presumptively community in character. (Fam. Code, § 760.)

If such property was acquired before 1985, the parties can show a transmutation from community property to separate property by oral or written agreement or a common understanding. (Fam. Code, § 852, subd. (e); *Estate of Blair, supra,* 199 Cal.App.3d at p. 167.) Although a joint tenancy deed is insufficient to effect a transmutation, a court may consider the form of title in determining whether the parties had a common agreement or understanding under the pre-1985 rules. (See *MacDonald, supra,* 51 Cal. 3d at p. 270 & fn. 6.) For joint tenancy property acquired with community funds on or after January 1, 1985, a valid transmutation from community

44

property to separate property requires a written declaration that expressly states that the character or ownership of the property is being changed. (Fam. Code, § 852, subd. (a); *MacDonald,* at p. 272). A joint tenancy deed, by itself, does not suffice.

Nothing in our decision precludes spouses from holding separate property as joint tenants or from transmuting community property into separate property held in joint tenancy as long as the applicable transmutation requirements are met. Nor does our decision alter the operation of the right of survivorship that is the main incident of joint tenancy title.


**LIU, J.**


**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**GROBAN, J.**

In re BRACE

S252473


Concurring and Dissenting Opinion by Justice Kruger


A married couple uses community funds to purchase real estate and takes title as joint tenants. Decades later, one spouse declares bankruptcy. Now, to determine just how much of the real estate the bankruptcy trustee can reach, the bankruptcy court must decide: Under California law, is the real estate the spouses' community property (and therefore reachable in full), or is it instead the jointly held but separate property of the spouses (and therefore reachable only as to the debtor spouse's one-half interest)?

I agree with much of the majority's answer to the question. At one time the law presumed that real estate acquired in this manner was the jointly held, separate property of the spouses. (See *Siberell v. Siberell* (1932) 214 Cal. 767 (*Siberell*).) But today, the presumption runs in the other direction: When a couple purchases property with community funds, the property generally continues to belong to the community unless the spouses expressly declare an intent to change—or "transmute"—it to separate property under Family Code section 852. (See Fam. Code, §§ 760, 852.) This express declaration requirement applies no matter how the couple takes title, whether as joint tenants or otherwise. (See maj. opn., *ante*, at pp. 2–3, 39 [form of title presumption in Evidence Code section 662 does not control the inquiry]; *In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1406 [property titled in one spouse's name

1

must satisfy statutory transmutation requirements to overcome community property presumption].)[1]

Where I part ways with the majority is on the timing of this change in the governing law. I would identify that date as 1985, when the transmutation rule presently codified in Family Code section 852 first took effect. This is because the old separate property presumption was itself a transmutation rule; the Legislature changed the rule when it changed the requirements for transmuting community property to separate property.

The majority, by contrast, identifies the relevant moment of change as 1975, when the Legislature implemented other reforms that "eroded the original impetus" for the old rule. (Maj. opn., *ante*, at p. 20; see *id*. at pp. 20–21.) But unlike the passage of the modern transmutation rule, the 1975 reforms had no direct effect on the old separate property presumption; "eroding the original impetus" for a rule is not the same thing as overruling it. And for the Braces and other married couples who purchased property in joint tenancy sometime between 1975 and 1985, the difference matters. These couples were entitled to depend on the law as it had existed before the present transmutation rule took effect in 1985. By backdating the relevant changes by a decade, the majority risks upending the

---

[1] Under a provision of the Family Code originally enacted in the Civil Code in 1983, an express declaration is not sufficient to transmute joint tenancy property into separate property for purposes of dissolution of marriage or legal separation of the spouses. (Fam. Code, § 2581; see Civ. Code, former § 4800.1, added by Stats. 1983, ch. 342, § 1, p. 1538.) But because the Braces' action does not involve dissolution or separation, that rule is inapplicable here.

reasonable expectations of individuals who structured their purchases in reliance on the law as the courts had then described it.

The relevant history begins with our 1932 decision in *Siberell*, which established the separate property presumption. *Siberell* was decided against the backdrop of various statutory presumptions governing the characterization of marital property. One of these presumptions, still substantively in effect today, was the presumption that property acquired by spouses during marriage is community property. (Civ. Code, former § 164, added by Stats. 1889, ch. 219, § 1, p. 328 [enacted in 1889].) A second presumption, known as the married woman's presumption, dictated that, despite the general community property presumption, "whenever any property is conveyed to a married woman by an instrument in writing, the presumption is that the title is thereby vested in her as her separate property. And in case the conveyance be to such married woman and her husband, or to her and any other person, the presumption is that the married woman takes the part conveyed to her as tenant in common, unless a different intention is expressed in the instrument . . . ." (*Ibid.*) The juxtaposition of these two statutory presumptions sometimes led to spouses holding different interests in the same piece of property. For example, in *Dunn v. Mullan* (1931) 211 Cal. 583, we held that a deed conveyed to "husband and wife" presumptively created a tenancy in common in which the wife held a half interest as her separate property and the husband held the remaining half as community property. (*Id.* at p. 588.)

The question in *Siberell* was whether the relevant statutes required the same result when spouses acquired property deeded in joint tenancy. We said no, for reasons specific to joint

3

tenancies. We explained, as an initial matter, that the spouses could not have different interests in the same property because joint tenancies require unity of interest, meaning that the joint tenant spouses must have identical and coextensive interests in the property. This unity of interest, we explained, would be destroyed if "a wife hold[s] half the property as her separate estate and the husband hold[s] the other half as community property, . . . [because] the interest of the wife would be unequal to and more than that of the husband." (*Siberell*, *supra*, 214 Cal. at pp. 771–772.) Specifically, in some instances, the wife would "own[] three-fourths of the property" and the husband would own "the remaining one-fourth," as was the result in *Dunn*. (*Siberell*, at p. 772.) But we went on to explain that a decision to take title in joint tenancy is "tantamount to a binding agreement between [the spouses] that the [property] shall not thereafter be held as community property but instead as a joint tenancy with all the characteristics of such an estate," under which "the equal interest of the spouses" is "classed as their separate but joint estate in the property." (*Id.* at p. 773.) Such an agreement was sufficient to rebut any contrary presumption—be it the married woman's presumption or the general community property presumption—that might arise by operation of statute. (*Ibid.*)

This latter point was at the core of *Siberell*'s holding, and it rested on what was, fundamentally, a transmutation theory—namely, that when spouses use community funds to purchase property titled in joint tenancy, they are agreeing to transmute their community property into separate, jointly held property. Indeed, *Siberell* itself used this very term in describing the issue, asking whether, when the spouses took title as joint tenants, "was not the common property, by the consent of the

spouses, then and there *transmuted* into one estate, the separate property of each and held jointly by them?" (*Siberell, supra,* 214 Cal. at p. 769, italics added.)

To be sure, *Siberell*'s transmutation reasoning was not beyond reproach. The *Siberell* court evidently believed that spouses could claim the chief benefit of a joint tenancy—the right of survivorship at death—only if they also intended to claim the property as separate during life. (*Siberell, supra,* 214 Cal. at p. 773.) So the court refused to treat the spouses' property as community during life, lest it deprive them of the right of survivorship at death. To hold otherwise, *Siberell* said, would have been "manifestly inequitable and a subversion of the rights of both husband and wife," because "following the demise of either," community interests in the property would "bring[] into operation the law of descent, administration, rights of creditors and other complications which would defeat the right of survivorship." (*Ibid.*) This particular concern was misplaced, for reasons the majority alludes to: A couple who takes property in joint tenancy may secure the right of survivorship and other incidents of separately held property at death, even if the property belongs to the community during life. (Maj. opn., *ante,* at pp. 36–37.)

But whatever concerns underlay *Siberell*'s reasoning, the critical point is that we instructed courts to presume that joint tenancy property is separate property because the spouses implicitly agreed to a transmutation—and not because the statutory scheme required this result. That is not to say the statutory scheme was entirely irrelevant to the outcome. The transmutation rule in *Siberell* did have the happy effect of equalizing the spouses' interests in the property, notwithstanding a set of statutory presumptions that sometimes

created a peculiar imbalance in the spouses' relative interests. But even though the statutory scheme may have partly motivated the *Siberell* transmutation rule, it was not the basis for the rule. In fact, *Siberell* expressly held that the statutes did not control the question, noting that the statutory married woman's presumption does not apply "to a case where 'a different intention is expressed in the instrument,'" including where the spouses agree to hold title in joint tenancy.[2] (*Siberell, supra,* 214 Cal. at p. 773, quoting Civ. Code, former § 164.)

Over the next 50 years, both this court and the Courts of Appeal repeatedly applied *Siberell*'s common law transmutation rule in a variety of contexts to hold that joint tenancy property was presumptively the separate property of the spouses. It is worth noting that none of this case law describes *Siberell* as rooted in any particular operation of the statutory presumptions; the cases instead describe *Siberell* in the language of transmutation.[3] (See, e.g., *Delanoy v. Delanoy,*

_____

[2] The same language was included in the presumption added in 1935, which abrogated *Dunn*'s rule for tenancies in common. (See Stats. 1935, ch. 707, § 1, p. 1912 ["[W]hen any of such property is acquired by husband and wife by an instrument in which they are described as husband and wife, *unless a different intention is expressed in the instrument,* the presumption is that such property is the community property of said husband and wife." (Italics added.)].) Because a joint tenancy deed had been understood to express a different intention—that is, an intention to hold the property as the separate property of the spouses—the 1935 amendment had no effect on the *Siberell* presumption. (*Siberell, supra,* 214 Cal. at p. 773; but see maj. opn., *ante,* at pp. 20–21.)

[3] The Legislature, too, apparently considered *Siberell*'s rule to be a common law transmutation rule. (See, e.g., Assem.

*supra*, 216 Cal. 23, 26 [citing *Siberell* for the proposition that when spouses purchase joint tenancy property with community funds, "the community interest must be deemed severed by consent"]; *Tomaier v. Tomaier*, *supra*, 23 Cal.2d 754, 757–758 [applying transmutation principles to hold that spouses could rebut the *Siberell* presumption with evidence that they intended to retain community interests in the property]; *Socol v. King* (1950) 36 Cal.2d 342, 345–346 [holding that, under established transmutation principles, the *Siberell* presumption controls unless both spouses intended to hold community interests in the property]; *Schindler v. Schindler* (1954) 126 Cal.App.2d 597, 602 [" 'The form of the conveyance is itself some evidence of the intent to change it from community property, and creates a rebuttable presumption to that effect.' "].)

Nor was the *Siberell* transmutation rule confined to actions between spouses, as the majority suggests. (See maj. opn., *ante*, at pp. 16, 24, 38.) *Siberell* did say that it was dealing with an interspousal action (*Siberell*, *supra*, 214 Cal. at p. 772), but nothing in *Siberell*'s transmutation reasoning was limited to that context.[4] Unsurprisingly, then, none of the cases applying

---

Interim Com. on Judiciary, Final Rep. on Relating to Domestic Relations (Jan. 11, 1965) p. 118 ["The result of *Siberell*, *Delanoy* [*v. Delanoy* (1932) 216 Cal. 23] and *Tomaier* [*v. Tomaier* (1944) 23 Cal.2d 754] has been to create in the joint tenancy deed a presumption that the property has been changed from community property to joint tenancy . . . ."].)

[4]     The majority highlights *Siberell*'s reference to *Hulse v. Lawson* (1931) 212 Cal. 614, but the *Hulse* citation is not particularly telling. Although the majority understands *Hulse* as using tracing, and not a form-of-title presumption, in the context of a creditor suit to characterize the spouses' joint

*Siberell* suggested the rule was limited to the context of dissolution or other interspousal disputes. Indeed, the *Siberell* rule was regularly applied outside the dissolution context, including to claims made by third party creditors. (See, e.g., *Hansford v. Lassar* (1975) 53 Cal.App.3d 364, 371–373 [third party creditor claim]; *Oak Knoll Broadcasting Corp. v. Hudgings* (1969) 275 Cal.App.2d 563, 568–569 [same]; see also *Socol v. King, supra,* 36 Cal.2d at pp. 345–346 [claim at death].) This understanding of *Siberell*'s breadth was evidently shared by the Legislature, which in 1965 effectively abrogated the *Siberell* presumption for certain joint tenancy property, but solely for purposes of dissolution—a limitation that would have been meaningless if *Siberell* did not already apply outside the dissolution context. (See Civ. Code, former § 164, amended by Stats. 1965, ch. 1710, § 1, pp. 3843–3844 ["[W]hen a single family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon divorce or separate maintenance only, the presumption is that such single family residence is the community property of said husband and wife."].)

---

tenancy property (maj. opn., *ante,* at p. 16), *Hulse* has generally been understood as standing for the very different proposition that a presumption based on how spouses take title can be rebutted by other evidence of the spouses' intent. (See *Hulse,* at pp. 616, 619–620 [framing question as whether property acquired in joint tenancy "had become" the community property of the spouses and relying on fact that spouses made mortgage payments with community property after the purchase]; *Tomaier v. Tomaier, supra,* 23 Cal.2d at p. 757 [citing *Hulse* for proposition that "evidence is admissible to show that husband and wife who took property as joint tenants actually intended it to be community property"].)

This brings us to 1973, when the Legislature prospectively eliminated the married woman's presumption for property acquired on or after January 1, 1975. This amendment changed the legal background against which *Siberell* was decided. But nothing in the 1973 amendments changed the *Siberell* rule itself—that spouses who take title to property as joint tenants are presumed to have intended to transmute their community property to separate property. It was not until the precursor to Family Code section 852 was passed in 1984 that the Legislature changed the transmutation rules, and even then only for transmutations occurring on or after January 1, 1985. (See Civ. Code, former § 5110.730, added by Stats. 1984, ch. 1733, § 3, p. 6302.) Though the 1973 amendments eliminated the statutory presumptions that would have created unequal interests in joint tenancy property absent *Siberell*'s rule, they did not speak to the core premise of the rule.[5]

---

[5] The majority claims that the *Siberell* rule could not have survived the 1973 amendments because those amendments eliminated the "carveout" to statutory presumptions for titles that expressed " 'a different intention.' " (Maj. opn., *ante*, at p. 21; see also *id.* at pp. 26–27.) But *Siberell*'s transmutation rule did not depend on a statutory "carveout" any more than did any other common law transmutation rules in effect before 1985—all of which, by their nature, operated to overcome the statutory presumption that property acquired by spouses during marriage is community property. There is no dispute that, as a general matter, transmutation principles survived the 1973 amendments and were used to overcome the statutory community property presumption until the Legislature tightened the requirements for transmutations effected on or after January 1, 1985. If common law transmutation rules in general survived the 1973 amendments, it is hard to see why *Siberell*'s rule alone would be an exception.

It makes sense, then, that contemporary authorities assumed *Siberell*'s transmutation rule survived the 1973 amendments. Lower courts continued to apply the *Siberell* rule to property acquired after January 1, 1975. (See, e.g., *Estate of Levine* (1981) 125 Cal.App.3d 701, 705 [applying *Siberell* presumption to joint tenancy property acquired after January 1, 1975]; cf. *Estate of Blair* (1988) 199 Cal.App.3d 161, 167, quoting *Levine*, at p. 705 ["Before January 1, 1985, the form of title presumption"—i.e., *Siberell*'s presumption—"could be rebutted by showing the character of the property had been changed by oral or written 'agreement or common understanding between the spouses.' "]; maj. opn., *ante*, at pp. 22–23.)   Legislative history accompanying relevant statutory amendments in 1983 suggests the Legislature held the same understanding.  (See Assem. Com. on Judiciary, Analysis of Assem. Bill No. 26 (1983–1984 Reg. Sess.) as amended Apr. 4, 1983, p. 2 ["The <u>Siberell</u> [form-of-title] presumption still holds even though a general presumption favoring community property was raised with the 1973 statutory change which gives a wife equal management and control of the community assets."]; Annual Rep. (Dec. 1983) 17 Cal. Law Revision Com. Rep. (1984) appen. VII, p. 864 [noting that Civ. Code, former § 4800.1, the precursor to Fam. Code, § 2581, would "reverse[] the common law presumption"—i.e., *Siberell*'s presumption—"that property acquired by the spouses during marriage in joint tenancy form is joint tenancy property"].)[6]

_____

[6]   Academic commentary from the time is also in accord. (See, e.g., Reppy, *Debt Collection from Married Californians: Problems Caused by Transmutations, Single-Spouse Management, and Invalid Marriage* (1981) 18 San Diego L.Rev.

These authorities demonstrate that, while the "history of the law of joint tenancies" may have been "convoluted" (maj. opn., *ante*, at p. 24), the governing rule was clearly understood: Notwithstanding the 1973 amendments, property acquired by spouses as joint tenants before 1985 was generally presumed to be their jointly held, separate property. This understanding should come as no surprise, since this rule was not based on the statutory married woman's presumption, or any other element of the statutory scheme. Before today's opinion, few would have ventured the view that *Siberell*'s transmutation rule had been effectively overruled by a set of property law reforms that had nothing to do with transmutation.

Again, the underpinnings of *Siberell*'s transmutation reasoning were open to question, for reasons the majority correctly identifies and now clarifies. (Maj. opn., *ante*, at pp. 36–37.) But this clarification comes too late for those who, like the Braces, acquired property in joint tenancy between 1975 and 1985 with the reasonable expectation that the property would

143, 164 ["Case law has firmly established, however, that the mere recital of joint tenancy raises a presumption that [the spouses] by agreement transmuted the community consideration to joint tenancy property." (Citing *Siberell*.)]; Sterling, *Joint Tenancy and Community Property in California* (1983) 14 Pacific L.J. 927, 960 ["Title in joint tenancy creates a rebuttable presumption that the property is in fact owned in joint tenancy rather than as community property."]; Bruch, *The Definition and Division of Marital Property in California: Towards Parity and Simplicity* (1982) 33 Hastings L.J. 769, 830, fn. 238 [noting that *Siberell* "still controls" and that the Legislature that enacted the 1973 amendments "signaled its understanding that *Siberell*'s presumption of equal separate property interests remains"].)

be presumed separate under *Siberell*'s longstanding rule.[7] Because the Braces were entitled to rely on the law as it then stood, I would hold that, in a suit against a bankruptcy trustee, property acquired by spouses in joint tenancy on or before December 31, 1984, is presumptively the spouses' separate property, while property acquired since then is presumptively the property of the community.

**KRUGER, J.**

---

[7] Though some of those couples might have been "confus[ed]" about the effects of their decision to take title as joint tenants (maj. opn., *ante*, at p. 24), surely it is safe to presume that others were aware of the state of the law at the time and took title expecting its protections.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re Brace

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding** XXX on request pursuant to rule 8.548, Cal. Rules of Court
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S252473
**Date Filed:** July 23, 2020

_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

Law Offices of Stephen R. Wade, Stephen R. Wade; Law Office of W. Derek May and W. Derek May for Defendants and Appellants.

Grace Ganz Blumberg as Amicus Curiae on behalf of Defendants and Appellants.

Tara Twomey for National Association of Consumer Bankruptcy Attorneys and National Consumer Bankruptcy Rights Center as Amici Curiae on behalf of Defendants and Appellants.

Marshack Hays, D. Edward Hays, Matthew W. Grimshaw and Judith E. Marshack for Plaintiff and Respondent.

Walzer Melcher and Christopher C. Melcher as Amicus Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Stephen R. Wade
Law Offices of Stephen R. Wade
405 N. Indian Hill Blvd.
Claremont, CA 91711
(909) 985-6500

D. Edward Hays
Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620
(949) 333-777

Christopher C. Melcher
Walzer Melcher LLP
5941 Variel Avenue
Woodland Hills, CA 91367
(818) 591-3700